State vs. Corcoran.

## No. 9763.

### THE STATE OF LOUISIANA vs. DENNIS CORCORAN.

An appeal in a criminal case will not be dismissed on the ground that the transcript of appeal has not been filed in the Supreme Court on the return day, if it appeared that it was filed within three judicial days thereafter.

In a prosecution for manslaughter, it was urged that a few minutes before the killing the deceased and a number of companions were assembled at a certain place; that they left there together and went to the place where the accused was found and was pointed out by one of the parties to the deceased, who was told by the one thus pointing him out to go and talk to him; and the deceased, without speaking, immediately approached the accused and seized him by the throat and beat him in the face; that the accused pulled loose from his assailant and retreated to the middle of the street, where he was followed by the deceased, again seized violently and beaten by him. In which last struggle the mortal blow was given by the accused. At this stage of the testimony the witness on the stand, and who was one of the party that had accompanied the deceased, was asked in substance, when this attack was made on the accused, what did you do, and what did each one of the party present do (naming each one), at the same time and place, which question was objected to, the objection sustained, and the witness not permitted to answer. Held, that the ruling was error. It is not true that the *res gestæ* can consist only of what was said and done at the time by the participants in a combat. They may embrace what was said and done by any and all present, which have any bearing on the affair or are in any manner connected therewith.

State vs. Corcoran.

A PPEAL from the Criminal District Court for the Parish of Orleans. *Baker*, J.

*M. J. Cunningham*, Attorney General, and *Lionel Adams*, District Attorney, for the State, Appellee:

### ON MOTION TO DISMISS.

A transcript of appeal in criminal cases must be filed within ten days after granting the order of appeal. The Code of Practice does not regulate criminal proceedings. Article 589 evidently refers to civil matters. 31 Ann. 1171; 31 Ann. 805; 31 Ann. 483; 6 Ann. 653; 13 Ann. 491; 14 Ann. 469; 36 Ann. 310; 37 Ann. 62; 32 Ann. 1268; Sec. 4, Act 30 of 1878.

### ON MERITS.

1.  A declaration by the deceased before the homicide, but having no casual connection with any immediate act produced by the fatal conflict which resulted in the killing, is not a part of the *res gestœ*, and therefore inadmissible in evidence. Wharton Cr. Ev. sec. 262.

2.  Before hostile threats by deceased against the accused are admissible in evidence, it must be shown the accused was present when they were made or they were communicated to him. 30 Ann. 1177.

3.  The ruling of the court *a qua* refusing to grant a new trial, based upon questions of fact, cannot be revised by this Court.

*Jas. C. Walker* for Defendant and Appellant.

### ON MOTION TO DISMISS.

The opinion of the Court was delivered by

TODD, J. There is a motion to dismiss the appeal on the ground that the transcript was not filed within ten days from the date of the order granting the appeal.

The order was granted on the 17th of May, and the transcript was filed on the 26th, same month.

This court has held that an appeal in a criminal case will not be dismissed on the ground that the transcript has not been filed on the return day, if it appears that it was filed within three judicial days thereafter. State vs. Hampton, 33 Ann. 1252; State vs. Butler, 35 Ann. 392.

The motion to dismiss is therefore refused.

### ON THE MERITS.

The defendant, Dennis Corcoran, indicted for manslaughter, was tried, convicted and sentenced to seven years' hard labor, and has appealed.

The case comes up on several bills of exceptions taken to the rulings of the trial judge on questions of evidence.

It is only necessary that we consider one of these bills.

The facts relating to it, and the circumstances under which it was taken are briefly these:

It had been proved that fifteen or twenty minutes before the killing took place, the deceased, Dan Haughery, Robert Simpson, Henry Hogan and several others, were at the Poydras Market; that they left together and proceeded to the corner of Liberty and South Poydras street, where the accused was found leaning against the posts of a shed. That when thus discovered, Robert Simpson said to Haughery, the deceased: " Dan, there is Corcoran; go talk to him." That thereupon the deceased, without saying anything, advanced upon the accused, seized him by the throat, and beat him in the face with his fist. That the accused after trying to ward off the blows, succeeded in getting loose from his assailant, retreated to the middle of the street; that the deceased pursued, and overtook him, again seized him by the throat, and again beat him in the face. It was during this second attack by the deceased that the mortal blow was given by the accused. It further appears, from the record, that the counsel for the accused had sought to establish that Haughery and his companions had left Poydras Market, where they were assembled, as above-mentioned, for the purpose of hunting Corcoran, and beating him; and this he attempted to prove by a witness on the stand, and asked the witness (quoting): "If shortly before the difficulty, say ten or fifteen or twenty minutes before the alleged homicide, did you not hear the deceased, Dan Haughery, ask Robert Simpson and Henry Hogan and others, to go with him to find Corcoran, to beat him ?"

On objection, the judge would not permit the witness to answer the question.

From all this it appears that the theory of the defense was that there had been a plot formed by Haughery and his friends to find Corcoran and beat him, and that, in accordance with this plot, they had hunted him up, and Haughery had attacked him. Then, after proving this first attack by Haughery on Corcoran, the retreat of the latter and the pursuit and second attack by Haughery, the counsel for the accused, doubtless for the purpose of further supporting the theory of the defense, i. e., the plot for a combined attack on Corcoran by Haughery and his friends, asked Hogan, one of this party, and then on the stand as a witness, the following question (quoting):

" While Haughery was beating accused in the face in the manner you have described, what did you do, and what did Robert Simpson do, and what did Thomas O'Boyle do, at the same time and the same place ?"

This question was objected to on the ground (quoting) :

"That it was not competent to prove in behalf of the accused anything that was said or done by any person or persons at the same time or place, except repeat what may have been said or done by the deceased or the accused, or by either of them."

This objection was sustained, and the witness not permitted to answer the question.

In this the judge erred, under the circumstances stated and the facts developed, the question seems to us entirely legitimate and pertinent. Nor is it true that only the acts and declarations of the actual participants in a combat or melee can be proved as a part or parts of the *res gestae*. The *res gestae* may also embrace the contemporaneous acts and declarations of others present. 1 Greenleaf, secs. 108-111; State vs. Horton, 33 Ann. 290 ; State vs. Vines, 34 Ann. 1083.

We do not know what this witness might have testified to in answer to the question appearing above had he been permitted to answer it; but we can well conceive, from the facts already proved, that he might have disclosed facts highly favorable to the accused.

His testimony might have conclusively established that the accused was the victim of a plot or conspiracy on the part of Haughery and his friends, as charged by the counsel for the accused ; that the entire party might have joined in the attack, or that Haughery was aided, abetted, or encouraged by the others, or other like facts tending to excuse the act of the defendant inflicting the mortal blow.

These are only suppositions, but whatever the answer of the witness to that question may have been, the accused was entitled to it, and the objection to the question was utterly untenable, and the ruling to the prejudice of the accused.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury be quashed, and that the sentence of the lower court be annulled and reversed, and the case be remanded to the lower court to be proceeded with according to law.