The opinion of the court was delivered by
Nicholls, C. J.
Lee Taylor, Tom Cosey alias Joe Thomas and James Martin were indicted in the District Court for St. Landry, for having feloniously stolen, taken and carried away a beef;
On the trial both Lee Taylor and the present appellant, Joe Thomas, were convicted and sentenced to hard labor. Taylor acquiesced in the judgment but Thomas appealed, and the judgment as to him was reversed and the case remanded for further proceedings. He was put upon his trial a second time and convicted, and from a sentence to ten months’ imprisonment at hard labor he prosecutes this appeal.
His complaints are embodied in three bills of exception. In the first, he complains of the exclusion of testimony as to an alleged confession made by Lee Taylor after conviction and sentence, as he was about being sent to the penitentiary, to the effect that he Lee Taylor alone was guilty of the crime charged; in the second, that one of his challenges for cause was improperly overruled; and, in the third, that the State was permitted to cross-examine one of his witnesses as to matters not testified to in chief.
We think the evidence of statements made by Lee Taylor was properly [excluded. It was clearly hearsay. See State vs. West, 45 An., and State vs. West and authories therein cited.
*1305 See also the case of Mitchell vs. Commonwealth (Ky.), 14 S. W. 489.
The bill of exception relative to the juror Oonkling, who was challenged for cause by the accused and the challenge overruled, declares that “the juror being upon his examination on his voir dire, the following questions were asked, to-wit:
Q. Have you formed or expressed an opinion in this case?
A. Yes.
Q,. Is that opinion a fixed one?
A. Not exactly.
Q. Do you feel able to go into the jury box and do impartial justice as a juror between the State and the defence?
A. Yes, if the evidence is the same I heard.
The defendant through his counsel then challenged the juror for cause.
The court thereupon further examined the juror, and he further said he was conscious of no bias or prejudice for the person or against him — further he did not know whether the reports he had heard were correct or not — whereupon defendant renewed his challenge for cause, which the court overruled on the grounds:
1. “ Because the juror was closely examined by the court by questions in addition to those enumerated herein, and was satisfied by the juror’s examination that the opinion which he had formed would yield to the evidence, and that notwithstanding said opinion his mind was free from bias and prejudice, and that he would render an impartial verdict.”
2. “ Even had the juror been incompetent the ruling of the court could not have prejudiced defendant, because of the fact that the juror Conkling did not sit on the jury, having been peremptorily challenged by defendant without exhausting his peremptory challenges, nine challenges remaining in his favor after challenging him.” 43 An. 365.
The series of questions asked by the judge of the juror, which satisfied him that the juryman was competent, are not given. We must assume the questions and the answers thereto were such as to justify the court’s ruling. But even if it were erroneous defendant has evidently suffered no legal injury therefrom. The third bill states that the defendant called to the stand a witness, to whom he propounded the two questions:
Q. State whether at the time you and your brother went to the *1306 defendant’s house on the night of the arrest you saw a piece of meat hanging on the gallery of the defendant’s house?
To which question the witness answered “ No.”
Q. Did you not testify to that effect on the former trial?
A. No, I don’t believe I did.
Whereupon the witness, being tendered to the State, was cross-examined as to what transpired at the time just previous to the visit made to the defendant’s house on the night of the arrest by the witness, and as to what was said by the defendant at the time of said visit when questioned whether there had been a butchering at his house that day, and as to contradictory statements made by the accused on the occasion of such visit.
To such questions, and to further cross-examination on said subject, accused, through counsel, objected on the ground that the State could not, on cross-examination, question the witness of the defendant as to matters not testified to in his examination in chief in order to establish its case against the accused, (the State claiming the same right to cross-examine a witness as the defendant) which objection was overruled, and said questions and further examination allowed by the State upon matters not testified to by the witness on his examination in chief being admitted and further cross-examination permitted on the grounds:
1. That the purpose of the defendant was to establish the fact that a part of the stolen property was not concealed, but in full open view, and to also show directly and indirectly that the witness on another occasion had admitted as a fact that a part of the stolen property was not concealed, and because of this state of facts the court permitted the State to show that the only meat which the witness saw was secreted in an outhouse, which was locked on the inside, the defendant’s son being therein, and that when first interrogated the defendant denied that a butchering had been made at his house, and subsequently, a few minutes thereafter, admitting that a beef had been killed and butchered by Lee Taylor. That this evidence was competent on cross-examination, it being closely related, in fact inseparably connected, with the matters and things inquired about in defendant’s examination of the witness, and was proper to rebut the inference that the witness had testified differently on another occasion, and that even if the statements of the witness were illegally allowed it could not prejudice the defendant, inasmuch as several *1307 other witnesses, both for the State and defence, had testified to the same facts, therefore the testimony of this witness was merely cumulative.
Upon a comparison of the two questions propounded to his own witness by the accused, and the answers to the same, with the questions and testimony drawn from that witness on cross-examination by the State, we are of the opinion that the cross-examination was permitted to take a range not warranted by what had been testified to on direct examination. The intention and expectation of the accused was to establish a specific fact, that on the night of his arrest a piece of meat was exposed to full view on defendant’s gallery — the question went no further. The answer, doubtless to the disappointment of the accused, was in the negative. The testimony elicited utterly failed in its purpose, and the case stood as to that fact so far as that witness was concerned as if he had not been put on the stand. The answer left nothing for the State to rebut or to contradict. Defendant’s attempt to prove and failure to prove the desired fact could but redound to his injury. We do not think that by the simple fact of asking the question the accused opened wide the door to proof of concealment and to proof of damaging, contradictory statements and admissions made by the accused.
In allowing the testimony the judge lost sight of the difference between the purpose which the defendant may have had in view on asking a question and the question itself and its answer. As said by this court in State vs. Stuart, 35 An. 1018, “The legality of the cross-examination in this particular must be tested by the matters stated in his examination in chief and not by the consideration of the purpose for which he had been introduced.” State vs. Swayze, 30 An. 1327.
When the accused propounded the second question he evidently intended to challenge the veracity of his own witness, but the answer given negatived the fact he sought to bring out. Be that as it may, we think the subsequent cross-examination was not in aid of sustaining the witness’ credit. There was no legal connection between the testimony brought out and the inferential claim on the part of the accused that on a former trial the witness had sworn that on the night of the arrest a portion of the stolen property was exposed on the gallery. The question is not whether the testimony was in its character relevant and admissible nor whether it *1308 could have been properly elicited from other witnesses or even from this one under other conditions, but whether it could be elicited from him under the exact circumstances under which it was. 40 An.
If this particular witness could not be lawfully cross-examined as he was, the judge was not justified in permitting it, for the reason that other witnesses, both of the State and the defence, bad testified to the same facts, and the testimony was merely cumulative. Cumulative testimony on the trial of a criminal case must not be confounded with cumulative evidence when such evidence is sought to be used after verdict as having been newly discovered as a ground for a new trial. The judge states the accused was not prejudiced, but it may have been on the weight and strength of the testimony of this very witness that the case turned. We do not know what weight the jury might have attached to the testimony of the other witnesses. We decline to dismiss this appeal for the reason that the action of the district judge making it returnable to New Orleans instead of Shreveport was, under the facts of the case, justified under Section 4 of Act No. 30 of 1878.
For the reasons herein assigned it is ordered, adjudged and decreed that the verdict of the jury and the judgment thereon rendered be set aside, annulled, avoided and reversed, and the case is remanded to the District Court for further procedings according to law.