(45 South. 260.)

No. 16,734.

STATE v. HOWARD.

(Nov. 18, 1907.  Rehearing Denied Jan. 9, 1908.)

1. CRIMINAL LAW—CONTINUANCE—AFFIDAVIT.

An affidavit for a continuance on account of the absence of witnesses, which fails to set forth that the facts expected to be established cannot be proved by other witnesses, is fatally defective.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1356.]

2. SAME—APPEAL—PRESUMPTIONS.

Where the record does not contain the testimony elicited by the judge from a prospective juror examined on his voir dire, this court will assume that it justified the overruling of a challenge for cause.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 3023.]

3. JURY—COMPETENCY—OPINIONS.

Though persons summoned to serve as jurors may have heard, through common talk, or read in the newspapers, of the case to be tried, and may have formed opinions concerning the same, they are nevertheless competent, if upon examination upon voir dire it appears that they would be able to disregard such opinions and try and decide the case in accordance with the evidence to be produced on the trial and the law to be given by the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, §§ 461–479.]

4. HOMICIDE—EVIDENCE.

Where two or more persons are tried for murder, it is competent, in order to show cooperation, preparation, and design, to prove that they were together at or near the place where the deceased might have been expected to be found at a time shortly anterior to that at which the homicide was committed.

5. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.

Whether witnesses, in giving their testimony, will be influenced by the fact that they and the defendant in a criminal prosecution are members of the same race, nationality, family, church, lodge, or union, is a legitimate subject for discussion; and criticism of such witnesses by the prosecuting officer, predicated upon the ground that they are likely to be so influenced, does not involve an appeal to the jury to base its own finding upon racial or other prejudice against the defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1676.]

6. WITNESSES — CROSS-EXAMINATION — IMPEACHMENT.

Cross-interrogatories, propounded to a witness with a view to discredit him, as to particular acts or a particular course of conduct, are properly excluded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1135.]

7. CRIMINAL LAW—EVIDENCE—RES GESTÆ.

While the acts and sayings of the participants, at the time of a homicide or so soon after the fatal blow has been struck as to preclude the idea of reflection and plan, form part of the res gestæ, and as such may be proved by third persons, the subsequent statements of mere observers, made after the striking of the blow, and which formed no part of the affair, cannot be so proved, but such persons must themselves be called and examined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 812, 815, 821.]

8. HOMICIDE — EVIDENCE — DYING DECLARATIONS.

The fact that a person mortally wounded consents to be removed to a sanitarium for the satisfaction of his wife and children is not inconsistent with his own abandonment of the hope of recovery; and where, upon the whole, the evidence justifies the belief that he is impressed with a sense of impending dissolution, his statements may be admitted as a dying declaration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 430–437.]

9. CRIMINAL LAW—EVIDENCE IN REBUTTAL.

The fact that testimony offered in rebuttal in a criminal prosecution tends incidentally to strengthen the case as originally presented by the state does not render it inadmissible for the purpose for which it is offered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1615–1617.]

10. SAME — EVIDENCE — EXPERT WITNESSES — COMPETENCY—UNREGISTERED PHYSICIANS.

When a witness in a criminal prosecution is offered, and, over the objection that he has not been examined and has not registered, as required by Act No. 49, p. 55 of 1894, is permitted to testify, as an expert physician or surgeon, it is no answer to the objection that the testimony is incompetent to say that the facts testified to might have been established by competent testimony, or that the testimony as given "was not strictly that of a medical expert." The act in question provides that practitioners who have not been examined and passed by the state board of medical examiners and have not otherwise complied with its provisions "shall not * * *

be allowed to testify as medical or surgical experts in any court of this state."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1067.]

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; Samuel Jamison Henry, Judge.

Silas Howard was convicted of murder, and appeals. Reversed and remanded.

William Tharp Cunningham, James H. Hicks, and James William Jones, Jr., for appellant. Walter Guion, Atty. Gen., and William Augustus Wilkinson, Dist. Atty. (Lewis Guion, of counsel), for the State.

## Statement of the Case.

MONROE, J. Coley Howard and the defendant, Silas Howard, having been indicted, with Sam Green, for the murder of S. A. Hart, and Coley Howard having made his escape, the two others were tried, with the result that Green was acquitted and Silas Howard convicted, without capital punishment, and sentenced to imprisonment for life, from which conviction and sentence he has appealed to this court, and now presents his case by means of bills of exception (1) to the refusal of the court to grant a continuance; (2, 3, 4) to the overruling of his objections to certain jurors; (5) to the admission of testimony over the objection of irrelevancy; (6) to the overruling of his objection to a portion of the argument of the district attorney; (7) to the admission of the testimony of Dr. Kearney as an expert; (8) to the exclusion of certain questions propounded on cross-examination to one Levasseur, a state witness; (9) to the overruling of his objection of the dying declaration of the deceased; (10) to the admission of the testimony of one Teagle in rebuttal.

## Opinion.

1. In State v. Landrum, 37 La. Ann. 799, it was said by this court:

"The affidavit for continuance, the refusal of which is the only error assigned, is fatally defective, in this: that it fails to aver inability to prove the facts referred to otherwise than by the witnesses of whose absence he [the affiant] complains. State v. Comstock, 36 La. Ann. 308."

And the case mentioned is cited in State v. Perique et al., 42 La. Ann. 404, 7 South. 599, in connection with the following excerpt from Bishop's Crim. Procedure, § 951, to-wit:

"If a witness is absent or sick, and not to be procured until a future day or term, he [referring to the applicant for continuance] must make affidavit setting forth the name and residence of the witness, the facts which he is expected to prove, their materiality to his case, as, for example, that he cannot prove them otherwise, and their relevancy to the issue, why his presence cannot now be had, and the reasons to believe it may be had then, together with what will render apparent his own want of laches."

In the instant case the affidavit fails, as it did in the case of State v. Landrum, supra, "to aver inability to prove the facts referred to otherwise than by the witnesses of whose absence" defendant complains, and the statement per curiam attached to the bill of exception is to the effect that:

"At least half a dozen witnesses testified to the same thing which it was expected to prove by the absent witness."

We do not, therefore, feel justified in holding that the trial judge, in refusing the continuance, abused the discretion with which he is vested. State v. Clark, 37 La. Ann. 128; State v. Murray et al., 111 La. 688, 35 South. 814.

2, 3, 4. These bills show that defendant challenged J. C. Clark, Percy Prudhomme, and B. F. Scott, tendered as jurors, on the ground that by their examination on voir dire they showed that they were not impartial; that, the challenges for cause having been overruled, defendant was obliged to challenge peremptorily; and that all of his peremptory challenges were exhausted before the jury was completed. The testimony given by the juror Clark on his voir dire is

not in the record, save the following, recited in the bill:

"Q. Mr. Clark, did I understand you to say that you had discussed this case, and had expressed a fixed opinion as to the guilt or innocence of the accused, and that it would take strong evidence to remove said fixed opinion? A. Yes; I did talk to your brother, C. M. Cunningham, and did express such an opinion, and from what I know, the way I feel about it, and from what I have said, it would take strong evidence to change me; but that has nothing to do with it if I am accepted as a juror."

In signing the bill, the judge says:

"The court tested this juror thoroughly, and he stated that he would give the accused a fair trial, and be guided entirely by the law and the evidence produced on the trial of the case, and disregard any previously formed opinion."

The rule in such case is stated as follows:

"When the bill does not show the series of questions asked by the judge, and the answers thereto which satisfied him that the juror was competent, the Supreme Court may assume that the questions and answers were such as to justify the court's ruling." Marr's Crim. Jurisprudence of La. § 327, citing State v. Taylor et al., 45 La. Ann. 1305, 14 South. 26.

The examination of the other proposed jurors discloses that they had heard of the case (though not, as far as appears, from the accused, or from any witnesses of the homicide), and had formed opinions, but that they would be able to disregard these opinions and give the defendant a fair and impartial trial upon the evidence to be produced therein and upon the law to be given by the court, and the ruling of the trial judge that they were competent is in accord with the settled jurisprudence of this court. Knobloch's Crim. Dig. p. 280 et seq.; State v. Le Duff, 46 La. Ann. 546, 15 South. 397; State v. Williams, 49 La. Ann. 1148, 22 South. 759; State v. Hebert, 104 La. 227, 28 South. 898; State v. Kellogg, 104 La. 586, 29 South. 285.

5. It appears from this bill that Clark, a state witness, was asked whether he had seen the defendant at Powhatan (where the deceased lived, and was killed) on the day before the homicide, to which it was objected that the testimony had no connection with what took place on the following day, "and injured defendant * * * because it insinuated that he was there with a gun, which objection was overruled on the ground, as stated by the court, that the testimony was offered to prove malice," and "in support of the theory of the prosecution that the prisoner and his brother were in Powhatan on the occasion of the killing for the purpose of resenting an attempt on the part of Hart [the deceased] to whip Coley Howard for some misunderstanding between them." The evidence was admissible as tending to show that, Coley Howard having determined to resent any attack which might be made upon him by the deceased, his brother, the defendant, was co-operating with him, and had been seen near the place of residence of the deceased upon the day before, as well upon the day of, the homicide. Whart. Cr. Ev. 49, 753, 799; 11 A. & E. Enc. of Law (2d Ed.) p. 508; State v. Johnson, 111 La. 935, 36 South. 30.

6. It appears that the district attorney in his argument to the jury said:

"I am sure that this jury will not be influenced by the testimony of this congregation of negro witnesses that Ben Howard, a big Mason and church member, has been able to procure to prove the innocence of his son, Silas Howard."

To which it was objected that it was uncalled for and was an appeal to race prejudice, since, as defendant, who is a negro, worked on his father's place and associated with negroes, it was impossible for him to procure white witnesses to prove his whereabouts at the time of the homicide. The trial judge assigns the following reasons for overruling the objections, viz.:

"It was brought out by the evidence that Ben Howard was a Mason and a high church man, and that several of the colored witnesses, testifying for the accused, were Masons and members of the church with Howard. The arraignment of the district attorney was severe, and was made in the heat of argument. However, there was no injury done the accused thereby."

Whether witnesses, in giving their testimony, will be influenced by the fact that they and the defendant in a criminal prosecution are members of the same race, nationality, family, church, lodge, or union, is a legitimate subject for discussion, and criticism of such witnesses by the prosecuting officer, predicated on the ground that they are likely to be so influenced, does not involve an appeal to the jury to base its own finding upon racial or other prejudice against the defendant. ·

7. Bill No. 7 will be considered hereafter.

8. This bill was taken to the ruling of the trial judge in sustaining objections to cross-interrogatories propounded to a state witness, with the view to discredit him, as to particular acts and a particular course of conduct having no bearing upon the issues involved in the prosecution. There was no error in the ruling complained of. Marr, Crim. Jur. of La. p. 754; State v. Guy, 106 La. 8, 30 South. 268.

9. It appears from this bill that a state witness testified that he was standing on the back gallery of a store when he heard the sound of shots, and, looking in the direction from which the sound came, saw the defendant, whom he recognized, fire two shots at the deceased and then run, and that he (the witness) immediately ran to the front of the store, a distance of about 50 or 60 feet, where he met a crowd of men coming from the scene of the shooting, a distance of 100 feet. It further appears that on cross-examination the witness was asked what the men said to or wanted of him; the object of the question being to show, as part of the res gestæ. that they said that Coley Howard had shot Steve Hart and was then running up the railroad track, and they wanted guns with which to follow and arrest him. The court ruled that statements of the crowd were not part of the res gestæ and that the testimony sought to be elicited was hearsay. The ruling was correct.

While the acts and sayings of the participants, at the time of a homicide or so soon after the fatal blow had been struck as to preclude the idea of reflection and plan, form part of the res gestæ, and as such may. be proved by third persons, the subsequent statements of mere observers, made after the striking of the blow and which formed no part of the affair, cannot be so proved, but such persons must themselves be called and examined. "The question is, is the evidence offered that of the event, speaking through the participants, or that of the observers, speaking about the event? In the first case, what was said can be introduced without calling those who said it; in the second case, they must be called." Wharton's Cr. Evidence, § 262; State v. Oliver, 39 La. Ann. 470, 2 South. 194; State v. Riley, 42 La. Ann. 995, 8 South. 469; State vs. Ramsey, 48 La. Ann. 1407, 20 South. 904; State v. Bellard, 50 La. Ann. 594, 23 South. 504, 69 Am. St. Rep. 461.

The ruling in the case of State v. Corcoran, 38 La. Ann. 949, cited by defendant's counsel, when considered in connection with the facts, is not in conflict with the view here expressed.

10. This bill was reserved to the admission in evidence of the statements of the deceased, as his dying declaration, that Coley Howard had killed him, and that "the Howard boys have got me; they have killed me, the Howard boys; Dunk shot me from behind, and Coley shot me from the front." The ground of objection was that it was not shown that the statements were made under a sense of impending dissolution. We agree with the judge a quo that the evidence shows conclusively that the deceased entertained no hope of recovery when the statements in question were made. It is true that he consented to be taken to a sanitarium at Shreveport; but he did so in order that his wife and children might be comforted with the reflection that nothing was left undone, and with no hope himself. He said: "Do what you please

with me for the sake of my wife and children; but I am a dead man"—and more to the same effect.

11. Defendant objected to the testimony of T. C. Teagle, a witness examined by the state in rebuttal, to the effect that more than one negro did the shooting, and that he saw one wearing a blue jumper, who was not the one followed by the crowd; the ground of objection being, that the testimony was merely a reiteration of that given by other state witnesses upon the opening of the case. The trial judge, however, says:

"I permitted this witness to testify that he saw a negro different from the one called Coley Howard, in order to rebut the evidence of witnesses for defense, who swore that only Coley Howard shot the deceased," etc.

The fact that the testimony in question tended incidentally to strengthen the case originally presented by the state did not render it inadmissible for the purpose for which it was offered and admitted. State v. Fourchy, 51 La. Ann. 229, 25 South. 109; Abbott's Trial Brief (Crim.) p. 308; Abbott's Trial Brief (Mode of Proving Facts) p. 549.

7. This bill (consideration of which has been intentionally pretermitted until now) recites that:

"The district attorney attempted to qualify Dr. Kearney, of Powhatan, La., as an expert, which was objected to by this defendant * * * on the ground that Dr. Kearney was not competent; that he had not passed the state board of examiners, and had no certificate recorded in any parish of this state, as is required by Act No. 49, p. 55, of the Acts of 1894. The district attorney admitted that Dr. Kearney had not passed the examination and did not have the said certificate recorded as above set forth. Defendant's objection was overruled by the court, and Dr. Kearney was permitted to testify as an expert, * * * and his illegal, inadmissible, and injurious testimony was to the effect that Steve Hart was shot, in his opinion, with three different caliber pistols, as follows, to wit: In the wrist, by 44 or 45; in the right side, by 32, the bullet going through the right side of the body and coming out on the left side, grazing the left arm as it came out; and in the hip, by a 38-caliber pistol. And Dr. Kearney further stated that he was positive of the above, judging by the size of the wounds, both from the points of exit and the points of entrance of the different bullets. Dr. Kearney's testimony would tend, if taken as true, to corroborate the state's theory that three negroes participated in the shooting in which Mr. S. A. Hart, a highly respected and prominent citizen, white man, was killed, while in realty only two pistols were used, and they were in the hands of Coley Howard, who had made his escape, after which, on the following morning after the shooting, Silas (or Dunk) Howard was arrested at his father's (Ben Howard's) home."

The statement per curiam attached to this bill is as follows:

"The evidence of Dr. Kearney was not strictly that of a medical expert. He testified as to the size of the holes made in the body by the shots. He swore that there were three different sized holes in the body of the deceased, and located the points of entrance and exit, and that the information was obtained by looking at them. It was shown that he had some experience of gunshot wounds; but the evidence given by him might have been furnished by any one who had seen the wounds. Dr. Kearney did testify that the wounds produced death; but Dr. Abramson, placed on the stand by the accused, testified to the same thing—that is, one of the wounds caused death. There were no other witnesses who testified about this fact. All the evidence, eliminating that of Dr. Kearney and Dr. Abramson, whom it was admitted was an expert, proved that the wounds killed Mr. Hart."

Act No. 49, p. 55, of 1894, requires that practitioners of medicine "in any of its branches in this state shall be examined by the state board of medical examiners, and if found competent shall obtain a certificate to that effect, which, after being recorded in the office of the clerk of the court of the parish in which the holder resides and indorsed by him, shall be delivered to the board of health," &c. Section 16 of the act provides:

"That any practitioner * * * failing to comply with the requirements of this act shall not * * * be allowed to testify as a medical or surgical expert in any court of this state," etc.

The statements contained in the foregoing bill—that Dr. Kearney was offered and was allowed to testify as an expert—are undisputed. Whether the testimony which the state chose to elicit from him in that character might have been obtained from him as a nonexpert, or from some other nonexpert, is immaterial to the present issue. Coming

from Dr. Kearney, speaking in the character in which he was allowed to qualify and testify, it was incompetent; and it is no answer to the objection to it that the facts testified to might have been established by competent testimony. So far as we are informed, no other witness testified that three pistols were used, or as to the course of the bullets; but, were it otherwise, we should have no means of knowing whether the jury relied upon such testimony, or upon that of the expert relied on by the state, which was improperly admitted; and, as it cannot be said that the defendant sustained no injury by such admission, the conviction must be set aside.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be set aside and annulled, and this case remanded, to be further proceeded with according to law.