94 So.2d 573 (1957)
Louis BROWN, Plaintiff-Appellee,
v.
YELLOW CAB COMPANY OF SHREVEPORT, Inc., Defendant-Appellant.
No. 8642.
Court of Appeal of Louisiana, Second Circuit.
March 27, 1957.
Love & Rigby, Shreveport, for appellant.
Wilkinson, Lewis, Wilkinson & Madison, Shreveport, for appellee.
HARDY, Judge.
This is a suit for personal injuries sustained by plaintiff while a passenger in a cab of defendant. Liability was admitted by the latter and the only question which was presented to the trial court and is under consideration on this appeal is the quantum of damages. Upon opening of trial defendant tendered the sum of $500, which tender was refused by plaintiff. After trial there was judgment in favor of plaintiff in the sum of $1,000, from which defendant has appealed. Plaintiff has answered the appeal, seeking an increase in the amount of the judgment to $5,000.
Plaintiff, Louis Brown, a resident of Kansas City, Missouri, employed by the Kansas City Southern Railway as a dining car chef, while a passenger in one of defendant's cabs on the evening of December 27, 1953, sustained physical injuries as the result of a collision in which the cab was involved. The principal injuries as alleged and contended by plaintiff consisted of damage to the ligaments of the xiphoid process of the sternum, a painful lumbosacral strain and aggravation of a pre-existing arthritic condition of the lumbosacral spine.
Plaintiff's claims of damage comprehended loss of wages, pain and suffering and a resulting permanent partial disability.
The record contains the testimony, by deposition, of Dr. Alexander Lichtor of Kansas City, for plaintiff, and the written report of an examination by Dr. Paul D.
*574 Abramson of Shreveport, which was introduced by defendant.
Counsel for defendant-appellant urges the reduction of the award on the ground that same was excessive and insists that the tender of $500 was not only adequate but generous, under the circumstances. Counsel for plaintiff urges the inadequacy of the award.
Before proceeding to a consideration of the factual issues, we find it necessary to dispose of an objection, interposed by counsel for defendant, to the admission and consideration of the deposition of Dr. Lichtor on the ground that the record does not disclose the fact that the witness is licensed to practice medicine in the State of Louisiana, and, as a result, his testimony as a medical expert should not have been received. Counsel's objection is based upon the provision of LSA-R.S. 37:1284 relative to certain restrictions with respect to unlicensed physicians, the pertinent portion of which section of the revised statute reads as follows:
"Unlicensed physicians shall not * * * be allowed to testify as a [sic] medical or surgical expert in any court * * *."
So far as we can determine, the question is res nova, although it has been touched upon in two cases in the jurisprudence of the State, namely, State v. Howard, 120 La. 311, 45 So. 260, and Cascio v. Standard Oil Company of New Jersey, La.App., 32 So.2d 66.
The Howard case involved a question as to the admissibility of the expert testimony of a Dr. Kearney, a resident of Powhatan, Louisiana, who admittedly had not passed the State Board of Medical Examiners and did not possess a certificate recorded in any parish of this State as required by Act 49 of 1894. A similar objection to the admissibility of the testimony of medical witnesses in the Cascio case was disposed by the court on the ground that the doctors involved were not testifying as experts.
In the instant case the deposition of Dr. Lichtor, which is sought to be excluded by the objection, discloses that he is a resident of Johnson County, Kansas; received the degrees of Bachelor of Arts from the University of Missouri in 1939, Bachelor of Science from the same institution in 1940, Doctor of Medicine from the University of Chicago in 1942; served an internship, 1942 to 1943, in Michael Reese Hospital in Chicago; was in the service of the United States Army Medical Corps, 1943 to 1946; studied in the Graduate School of the University of Wisconsin from June to December, 1946; spent the year 1947 in England at the Royal National and the Robert Jones Orthopedic Hospitals; was with the Massachusetts General Hospital in Boston from January to June of 1948, and the Michael Reese Hospital, Chicago, from July, 1948 to June, 1950; began practice in Kansas City in 1950; was a member of the Jackson County Medical Society, the Missouri State Medical Association, the American Medical Association, the Southern Medical Association, a Diplomate of the American Board of Orthopedic Surgery, and a Fellow of the International College of Surgeons. At the time of giving his deposition the witness maintained offices in Kansas City and was a member of the staffs of the Menorah Hospital and the Research Hospital.
In the face of the above representation of education, training, experience and professional qualification we are truly disposed to feel that the objection, at best, constitutes a super-technical contention which is scarcely deserving of consideration. However, in deference to counsel who has seriously urged the objection and in view of the fact, as above observed, that the point does not seem to have been disposed by our courts, we proceed to further consideration thereof.
*575 The source of LSA-R.S. 37:1284 is found in Section 17 of Act 56 of 1914. With due respect to the distinguished redactors of the Revised Statutes we feel that the appropriate section of the original act, being clearer, more comprehensive and more exactly worded, provides a better guide for an interpretation of its intent and purpose. We therefore quote the entire section as follows:
"Section 17. Be it further enacted, etc., That any practitioner of medicine, in any of its departments, failing to comply with the requirements of this act, shall not be exempt from jury or military duty, nor be permitted to collect any fees or charges for services rendered, nor be allowed to testify as a medical or surgical expert in any court in this State, nor execute any certificates as a physician or surgeon, nor to hold any medical office, nor to be recognized by the State or parish or municipal corporation as a physician or surgeon; nor shall he be entitled to enjoy any of the privileges, rights or exemptions granted to physicians or surgeons by the laws of this State."
It is further pertinent to observe that the title of Act 56 of 1914 specifically defines its general purpose:
"To regulate the practice of medicine, surgery and midwifery, in the State of Louisiana; * * *." (Emphasis supplied.)
Clearly, if the witness in this case, Dr. Alexander Lichtor, the admissibility of whose testimony was brought into question by the objection, had been a resident of the State of Louisiana at the time and had not been qualified under the laws of this state to practice medicine, as evidenced by a proper certificate, the objection would be valid. But to say that a member of the medical profession, duly qualified under the laws of his own state, who has treated a litigant, also a non-resident, is disqualified from testifying in the courts of the State of Louisiana would be to extend extra-territorial implications to a law which is clearly defined and intended to regulate the practice of medicine within the State. We find nothing in the statutes which indicates that this was an intended purpose, nor that it should be accorded an unintended application. It follows that the trial judge quite properly considered the testimony and thus, by implication, overruled the objection.
Proceeding to a consideration of the merits of the case, it is established that plaintiff was not examined nor treated by a physician until after his return to Kansas City. The injury occurred on December 27th, the private car upon which plaintiff was employed left Shreveport on December 29th and arrived in Kansas City on the morning of December 30th. On December 31st plaintiff consulted Dr. Lichtor and again on January 4th. The doctor's examination disclosed tenderness indicating a soft tissue injury to the xiphoid process of the sternum, and a soft tissue injury in the low back area. Another examination was made by the same physician on June 6, 1955, at which time he did not find any serious change in plaintiff's condition. X-rays of plaintiff taken on the occasion of these several examinations were essentially negative with the exception of what appeared to be an indication of hypertrophic changes of the lateral edges of the lumbar vertebrae. The treatment prescribed consisted of medication and a steel support for the abdomen and back, which support plaintiff testified he was still wearing at the time of the trial, almost two years subsequent to the accident.
Sometime during the summer of 1954, at the direction of his counsel, plaintiff was examined by Dr. T. M. Oxford of Shreveport, a specialist in orthopedic surgery, and plaintiff testified that Dr. Oxford gave him a thorough examination and made x-rays. Dr. Oxford was not called as a witness on behalf of plaintiff, and, as counsel for defendant correctly contends, it must be *576 presumed that his testimony, if adduced, would have been adverse to plaintiff's contention of disability. This presumption was noted by the trial judge in his written opinion.
The report of Dr. Abramson, based upon an examination of plaintiff in February, 1954, indicates little objective evidence of back injury and indicates only the possibility of traumatic aggravation of his pre-existing arthritic condition.
The lay testimony by plaintiff and two of his co-workers adds little, if anything, to the general picture.
Summarizing all the testimony of both medical and lay witnesses, we conclude plaintiff has established a certain degree of injury to the soft tissues in the area of the sternum and to the lumbar area of the back. But we further determine that these have not been established as being, in any sense, permanent or disabling. Payroll records of plaintiff's employer, the Kansas City Southern Railway, reflect plaintiff's steady employment since the date of the accident. In this connection we note that plaintiff has completely failed to establish any claim for loss of wages attributable to his injuries.
In short, we find plaintiff is entitled to be compensated only for some temporary pain and suffering, of short duration, which was not serious in nature or degree, and for a period of inconvenience, discomfort, and a minimum of pain attendant upon the performance of his ordinary duties in the course of his employment over a period of some two years. We have not been impressed overmuch by plaintiff's claims as the record clearly indicates that they have been grossly exaggerated.
Taking into consideration all the facts of the case we cannot conclude that the award of $1,000 is either inadequate or excessive. It follows that the judgment appealed from should be, and it is hereby, affirmed at appellant's cost.