O’NIELL, Chief Justice.
 

 J. C. Winstead and Dave Richey were prosecuted under an indictment charging them with the murder of a young man named Carson Cudd. Winstead was found guilty of manslaughter and Richey of murder without capital punishment. They reserved 26 bills of exception during the trial. Nine of the bills, numbered 5, 6, 8, 10, 11, 13, 14, 17 and 20, being without merit, were abandoned by counsel for the appellants.
 

 Bill No. 1 was reserved to the overruling of an objection made by the defendants’ attorney to a question which the district attorney asked the coroner on direct examination as a witness for the State. The question was “How many witnesses were examined at the inquest ?” The objection was that the record of the inquest was the best evidence of the number of witnesses who testified at the inquest. The witness answered that only two witnesses testified at the inquest. We do not find the proces verbal of the coroner’s inquest in the record, but infer from the per curiam on the bill of exception' that the proces verbal does show that only two witnesses testified at the coroner’s inquest.. The purpose of the question was to show that no other witnesses testified at the inquest besides the two mentioned in the proces verbal. -The verdict of the coroner’s jury was that Carson Cudd’s death was caused by his being struck by an automobile on the public highway. The body was found on the
 
 *375
 
 highway by a passing taxi driver soon after midnight. The theory of the district attorney in the trial of the case was that Winstead and Richey had dragged Cudd’s body to the place where it was found on the highway after Richey had killed Cudd by striking him on the head with a railroad coupling pin. It appears that Winstead and Richey operated a roadhouse, called “The Snuff Box”, where they sold intoxicating liquors and conducted a dance hall. Richey lived in concubinage with a woman named Mabel Louise Campbell on the premises. Winstead lived in concubinage with another woman. The killing of Cudd occurred on the night of July 8, 1940; but, on account of the verdict of the coroner’s jury, that Cudd had come to his death by being struck by an automobile, no charges were made against Winstead or Richey for a long time afterwards. They were indicted by the grand jury on October 19, 1942. On the trial of the case Mabel Louise Campbell testified that she had remained in the dance hall after all others had gone; that she witnessed the killing of Cudd through a back window of the dance hall; and that Richey did the killing by striking Carson Cudd on the head with an iron rod, or coupling pin. The coupling pin was found under the dance hall a short time before the men were indicted, and expert testimony was introduced to show that there were blood stains on the iron. Mabel Louise Campbell testified that Winstead took part in the killing and that he and Richey immediately afterwards dragged the dead body to the place where it was found on the highway. Aside from the testimony of Mabel Louise Campbell, the evidence against the defendants on the trial of the case was only circumstantial evidence. The purpose of the district attorney in asking the coroner how many witnesses were examined at the inquest was to show that the verdict of the coroner’s jury was not founded upon all of the evidence that the State was offering on the trial of the case.. For that reason the ruling of the judge, allowing the district attorney to prove that, no other witness had testified before the-coroner’s jury than the two witnesses, named in the proces verbal of the inquest,, was correct. The proces verbal was offered in evidence for the only purpose for which it was admissible, namely, to prove the death and the cause of death. The object of the district attorney was to prove that the Coroner’s jury was mistaken ini finding that the death of Cudd was caused! by his being struck by an automobile. The-district attorney was not bound by the finding of the coroner’s jury that Cudd had been killed by being struck by an automobile. The testimony of the coroner that only two witnesses were examined at the inquest did not contradict but merely confirmed the proces verbal, as far as it showed the number of witnesses who were examined. Conceding, for the sake of argument, that there was no necessity for confirming 'by verbal testimony the showing in the proces verbal of the coroner’s, inquest that only two witnesses were examined, certainly no wrong was done by such testimony.
 

 Bill No. 2 was reserved to a ruling sustaining an objection made by the district attorney to a question which counsel
 
 *377
 
 for the defense asked the coroner while on the stand as a witness for the State and under cross-examination. The question was propounded thus: “And it rested that way for a little more than two years?” The meaning of the question was that no one was accused of murdering Cudd during the period of more than two years after the coroner’s jury rendered the verdict that Cudd had been killed by an automobile on the highway. The only objection made to the question was that it was irrelevant and immaterial. The judge sustained the objection on the -ground that the fact that no one was accused of murdering Cudd during the period stated was obvious to the jury and that a repetition of the evidence on the subject was unnecessary. We assume from the per curiam, and from the fact that it was obvious to the jury that no one was accused of murdering Cudd during the period stated, that the main reason for the ruling complained of was that it avoided a waste of time in the cross-examination of the coroner. No harm was done by the ruling.
 

 Bill No. 3 has reference to the testimony of Mabel Louise Campbell that, from her position in the dance hall, and looking through a window, she saw Richey kill Cudd in the yard behind the dance hall. While the coroner was on the stand as a witness for the State, and under cross-examination by counsel for the defendants, he was asked the question: “You stated that it was a dark, foggy night; I want to ask you as a man of medicine, whether or not, in your opinion, one could have been on the inside of the room lighted, and [could have] seen what was going on on the outside, not lighted?” The objection of the district attorney was that the question called for an opinion from one who was not qualified as an expert or specialist on the subject. The reason for which the judge sustained the objection was that the coroner had no personal knowledge of the conditions prevailing in and behind the dance hall, and, specifically, as to how dark or how foggy it was at the time and place, and hence that any opinion which the coroner might have given in response to the question was a matter of no importance. Any such opinion would have had little or no effect as evidence. Conceding for the sake of argument that the judge should have allowed the coroner to answer the question, no harm was done by the judge’s sustaining the objection.
 

 Bill No. 4 was reserved to the overruling of an objection made by counsel for defendants to a question propounded by the district attorney to Carson Cudd’s father on redirect examination as a witness for the State. The question was: “Where was your son going the next day?” The “next day” meant the next day after the night on which the dead body of Carson Cudd was found by the taxi driver on the highway. The answer of the witness was that his son had made preparations to enter the armed forces on the day referred to. The obj ection to the evidence was that it was not only irrelevant and immaterial but that it was prejudicial to the defendants to show that Carson Cudd was about to do his patriotic duty on the eve of his being killed. The evidence was objected to on the
 
 *379
 
 further ground that the witness could not know of his own knowledge what his son-intended to do on the next day after the date referred to. It appears from the per curiam that the witness had direct knowledge that his' son had made preparations on the day before he was killed to enter the armed forces the next day. The testimony therefore was not hearsay evidence. And it was relevant to the State’s theory that Dave Richey had a motive for killing Cudd, the theory being that Cudd’s attentions to Mabel Louise Campbell had aroused the jealousy of Richey. A quarrel ensued between Richey and Cudd on the night of the killing, on account of Cudd’s hugging and kissing Mabel Louise Campbell during their dancing in Richey’s dance hall. The purpose of the district attorney in proving by Cudd’s father that Cudd intended to enter the armed forces on the next day after his visit to the dance hall was to show, as far as the evidence might tend to show, that Carson Cudd visited the dance hall that night for the purpose of bidding farewell to Mabel Louise Campbell. For that purpose the testimony of the father of Carson Cudd was admissible because it tended to support the district attorney’s theory that Richey had a motive for killing Carson Cudd.
 

 Bill No. 7 was reserved to a remark made by the judge while ruling on an objection to a question asked a State witness, named Lila Belle Cobb, while she was on cross-examination. The objection to the statement was that it was a comment on the evidence in the case. In her testimony in chief the witness had identified a coupling pin as the one which she said she had seen in Richey’s night club sometime previous to the killing. The attorney for the defendánts in their cross-examination of the witness produced two other coupling pins, exactly like the one the witness had identified as the one she had seen in the night club previous to the killing, and the attorney asked her to identify the coupling pin that she had seen in the night club previous to the killing. She replied that the three coupling pins were so much alike that she could not tell which one was the one that she had seen in the night club previous to the killing. The attorney for the defendants persisted in his cross-examination on the subject, and an argument ensued between him and the district attorney as to what the witness had said; whereupon the judge in putting an end to the argument stated in the presence of the jury: “She testified she didn’t know which was which, they were so much alike.” That comment by the judge could not have been harmful to the defendants in this case, because it merely emphasized what the attorney for the defendants was trying .to impress upon the jury; that is, that the witness could not identify the coupling pin which she said she had seen in Richey’s dance hall previous to the killing.
 

 Bill No. 9 was reserved to a ruling of.the judge sustaining an objection made by the district attorney to a question propounded to a witness for the State, on cross-examination. The purpose of the question was to test the credibility of the witness. The district attorney on his direct examination of the witness had
 
 *381
 
 asked her whether she had any interest in the case, and over the objection of the attorney for the defendants she answered that she did not have any interest in the case. On cross-examination the attorney for the defendants asked the witness whether she would prefer to see the defendants acquitted or to see them convicted. The district attorney objected to the question on the ground merely that it was “improper cross-examination”; and the judge sustained the objection. The district attorney’s statement that the question was improper cross-examination did not convey any information as to what his objection really was. The purpose of the question, obviously, was to discredit the statement of the witness that she had no interest in the case, by showing that she would rather see the defendants convicted than to see them acquitted. In fact, that was exactly the question asked her on cross-examination. Our opinion is that the judge should have overruled the objection of the district attorney. But it is said in the per curiam that the attorney for the defendants was given ample opportunity to cross-examine the witness on the question whether she had any prejudice against the defendants. Our opinion therefore is that the error of the judge in refusing to allow the witness to answer the question, whether she would rather see the defendants acquitted or see them convicted, was not of sufficient importance to warrant an annulment of the verdict.
 

 Bills numbered 10 and 11 are so similar that they may be dealt with together. Each bill was reserved to the overruling of an objection to a question which the district attorney asked Mabel Louise Campbell on direct examination as a witness for the State. The first question was “While you worked there was Richey fond of you?”; to which the witness answered, over the objection of the attorney for the defendants, “He was”. The other question was “Was he or was he not jealous of you?” The witness answered, over the objection of the attorney for the defendants, “He was”. The objection made by the attorney for the defendants was that the question elicited only an opinion of the witness. There is no law or rule of evidence forbidding a non-expert witness to express an opinion on a subject requiring no scientific-or technical knowledge for the basis of the opinion, provided the witness states also the facts on which his or her opinion is founded. It appears from the per curiam on other bills of exception— and the record shows generally, and it is-not disputed, that the jury had ample evidence of the facts on which Mabel Louise Campbell based her opinion — or came to the conclusion — that Dave Richey was fond of her and jealous of her. As a rule, such opinions or conclusions are the result of an accumulation of apparently insignificant facts and circumstances, better known to-the one who is the subject of the fondness and jealousy than to any one else. “Trifles, light as air, are to the jealous confirmations strong as proofs of Holy Writ.” There was no legal objection to Mabel Louise Campbell’s expressing her opinion— from the facts and circumstances that were shown to the jury — that Dave Richey was-fond of her and jealous of her.
 

 
 *383
 
 Bill No. 12 was reserved to the overruling of an objection to a question which the district attorney asked Mabel Louise Campbell on direct examination as a witness for the State. The question was: “Prior to July 8th, 1940 [the date of the killing], had there been any difficulties between [Carson] Cudd and [Dave] Richey?” The witness answered, over the objection of the attorney for the defendants: “Two or three weeks before that, they had an argument.” The only objection made by the attorney for the defendants was “that no overt act was shown”. The so-called “overt-act” rule of evidence has to do only with threats or quarrels on the part of the victim of the crime, in a case where the defendant pleads self-defense; it has nothing to do with previous threats or quarrels on the part of the defendant, either in a case where he pleads self-defense or in a case where he denies that he committed the act for which he is on trial. Evidence of previous quarrels or previous threats on the part of the defendant is always admissible, not only as tending to show that he was the aggressor in the final difficulty, in cases where he pleads self-defense, but also as tending to show that the defendant committed the crime, in a case where he denies that he is the one who committed the crime. It is obvious that the attorney who represented the defendants at the trial, who is not representing them in this court, was confused in the objection which he made in this instance.
 

 Bill No. IS was reserved to a ruling sustaining an objection by the district attorney to the following question propounded to the State’s witness, Mabel Louise Campbell, on cross-examination: “You said you were going to bed that night; who were you going to sleep with?” The district attorney’s objection to the question was that it was irrelevant and immaterial, and was an improper way to test the credibility of the witness. In the per curiam it appears that similar questions had been propounded to this witness by the district attorney himself, and without any objection by the attorney for the defendants, the witness had stated that she had slept that • night with Dave Richey. The sustaining of the State’s objection to the defendants’ having the witness admit that she intended to sleep with Richey on the night of the homicide was certainly harmless in the light of the undisputed proof before the jury that the witness was on sleeping terms —so to speak — with Dave Richey, and that she slept with him on the night of the homicide. Her being a witness against him, after keeping her secret for more than two years, was perhaps one of the instances where “Heaven has no rage like love to hatred turned, nor hell a fury like a woman scorned”.
 

 Bill No. 16 was reserved to a ruling sustaining an objection made by the district attorney to a question propounded' by the attorney for the defendants to the State’s witness, Mabel Louise Campbell, on cross-examination. The question was “Were you ever locked up before?” The objection was that the answer intended to be elicited was “irrelevant and immaterial”. Considering that the witness was on cross-examination, the objection was not well
 
 *385
 
 founded — the purpose of the question being to impeach the witness. But it is said in the per curiam that the witness had been questioned already on the number of times she had been arrested and convicted, and that she had answered ' the questions. From which we assume that the attorney was prolonging the cross-examination on that subject unnecessarily.
 

 Bill No. 18 was reserved to the overruling of an objection made by the attorney for the defendants to a question which the 'district attorney asked an officer of the state highway police, who was a witness for the State. The question was: “How long have you been investigating this case?” The objection was that the question was “irrelevant and immaterial”. The answer of the witness was that he had not given his time constantly to an investigation of this case, but had given a considerable part of his time to investigating this case for more than two years — having commenced his investigation about six or seven days after the finding of the dead body on the highway. The testimony was relevant and material in that it showed the extent to which the witness went in obtaining the information which he gave in his testimony before the jury.
 

 Bill No. 19 was reserved to the overruling of an objection to another question propounded by the district attorney to the officer of the highway police. The question was: “What was the purpose in giving this iron rod to Major Adkins?” The iron rod was the coupling pin which had been found under Richey’s dance hall; and Major Adkins was a chemist. The answer of the witness was: “To have it examined for blood stains.” It appears from the per curiam and was conceded in the argument that Major Adkins and perhaps another witness who qualified as a chemist testified that there was evidence of human blood on the coupling pin. There was therefore no merit in the objection to the district attorney’s proving that the police officer gave the coupling pin to Major Adkins for examination for blood stains.
 

 Bill No. 21 was reserved to the overruling of an objection to another question propounded to the State highway police officer on direct examination by the district attorney. The question was whether the officer preferred charges against Richey and Winstead after having obtained a statement from the witness, Mabel Louise Campbell. The only objection made by the attorney for the defendants was that “the charges themselves” — meaning the affidavit and indictment — were the best evidence of the fact that the State highway police officer had preferred charges against Richey and Winstead. The answer of the witness was “Yes, sir”. The purpose of the question was not to show merely that the officer had preferred charges against the defendants, but to show that the charges were preferred after the officer had obtained a statement from the witness, Mabel Louise Campbell. For that purpose the question and answer were admissible.
 

 Bill No. 22 was reserved to the overruling of an objection made by the attorney for the defendants to a question asked the highway police officer on direct examination as a witness for the State.
 
 *387
 
 The question was: “For what purpose was she [Mabel Louise Campbell] put in jail?” The only objection made was that the answer intended to be elicited “was inadmissible, irrelevant and immaterial”. The objection gave little or no information as to what the objection really was. The answer of the witness was: “I hadn’t completed my investigation at that time.” From which we infer that the witness was held as a material witness pending the investigation. In fact it is so stated in the per curiam annexed to this bill. It is stated also in the per curiam that the State had introduced evidence showing that Mabel Louise Campbell was imprisoned during the investigation of this case, and that the purpose of the question which was objected to was to show that she was imprisoned not as a suspect but as a material witness. For that purpose the answer of the police officer to the question which was objected to was admissible.
 

 Bill No. 23 was reserved to the overruling of an objection made by the attorney for the defendants to a question which the district attorney asked the coroner on redirect examination as a witness for the State. The question was: “Was there any evidence warranting the verdict of the coroner’s jury that the boy was struck by a car, other than that his body was found on the highway?” The objection of the attorney for the defendants was that the district attorney was attempting to impeach the verdict of the coroner’s jury. The answer of the coroner was: “No, sir.” The purpose of the evidence was to show that it was not unlikely that the coroner’s jury was mistaken in concluding that Carson Cudd had come to his death by being struck by an automobile. There is no rule of evidence forbidding the State to show on the trial of a homicide case that the verdict of the coroner’s jury was not a correct verdict. The only purpose for which the proces verbal of a coroner’s inquest is admissible in evidence on the trial of a homicide case is to prove the death and the cause of death. The coroner’s verdict is not admissible to implicate or exculpate any individual. The judge was right in permitting the district attorney to prove that there was no other evidence before the coroner’s jury to support the verdict that the death of Carson Cudd was caused by.his being struck by an automobile than the mere fact that his body was found on the. highway.
 

 Bill No; 24 was reserved to the overruling of an objection made by the attorney for the defendants to the statement made by the coroner as a witness for the State, on redirect examination, that the injuries found on the dead body of Carson Cudd were not such as would ordinarily be made by a car. The objection was that the statement was merely an expression of the opinion of the witness. The attorney for the defendants therefore requested the judge to instruct the jury to disregard the statement of the witness. The judge denied the request, and a bill of exception was reserved to the denial. The coroner, being a licensed and practicing physician, was qualified to express an opinion as to whether the wounds found on the dead body of Carson Cudd were or were not
 
 *389
 
 such as might ordinarily be inflicted by an automobile striking the man. We assume that the coroner in his testimony described the wounds and explained the facts on which he based his opinion that the wounds would not ordinarily have been inflicted by an automobile striking the man.
 

 Bill No. 25 was reserved to the overruling of an objection made by the attorney for the defendants to a question propounded by the district attorney to the defendant, Dave Richey, testifying in his own behalf and on cross-examination. The question was “Have you ever had any fights over any woman?” The objection made by the attorney for the defendants was that, the question was an attempt to attack the character of the witness and was not pertinent to the question of his credibility as a witness. The defendant’s answer to the question was “No, sir”. After the objection had been overruled and the witness had answered the question the district attorney asked him: “Didn’t you and Buddy Broussard have a cutting scrape or fight over either his wife or yours?” To which question the attorney for the defendants made the same objection, and, after it was overruled the witness again answered: “No, sir”. That answer to both questions rendered them harmless.
 

 Bill No. 26 was reserved to a remark made by the district attorney in his closing argument to the jury, as follows: “Mrs.. Winstead stands before you as a self-confessed perjurer, and the law provides that if you find that a witness testified falsely about one thing you can disregard the entire testimony of that witness”. The attorney for the defendants immediately requested the judge to instruct the jury to disregard the statement of the district attorney on the ground that the jury should not disregard entirely the testimony of any witness on the ground that she or he had made a false statement unless the false statement was' of a material fact in the case. The judge refused to give the' instruction then, but in the per curiam he states that in his general charge he instructed the jury to take the law from him and not from the argument of either the district attorney or the attorney for the defendants; and in the per curiam the judge declares also that in his general charge he instructed the jury “substantial-, ly as requested by the defense counsel as indicated in this bill”. The so-called perjury of which the witness was accused in the district attorney’s argument was the statement made by her in the preliminary examination of this case that she and the defendant, J. C. Winstead, were married; the fact being that she was living with him in concubinage. It is possible that she regarded her status as that of a common-law wife, and hence that she had no thought of committing perjury by her statement that she was married. to Winstead. For that reason the argument of the district attorney was not fairly supported by the maxim, Falsus in uno, falsus in omnibus. But the argument was after all nothing more than an argument, and, with the facts before the jurors, they could not have been misled. Considering also that the judge in his final charge to the jury gave, substantially, the instruction which, the attorney for the de
 
 *391
 
 fendants requested in connection with the objectionable remark of the district attorney, this bill of exceptions would not warrant an annulment of the verdict and sentence appealed from.
 

 For the reasons stated the verdict and sentence are affirmed.'