35 So.2d 654

**STATE v. DAMICO.**

No. 38619.

April 26, 1948.

John R. Hunter & Son, of Alexandria, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Ben F. Thompson, Dist. Atty., and Walter M. Hunter, Asst. Dist. Atty., both of Alexandria, for the State.

ECHEZABAL, Judge.

The defendant, Charles Damico, was charged by information with gambling, in violation of Article 90 of the Louisiana Criminal Code. He was tried, convicted, and sentenced to pay a fine of four hundred dollars and costs, and in default of the payment of the fine to serve ninety days in the parish prison; and in addition thereto to serve one year in the parish jail. The court suspended the unconditional sentence. From this conviction and sentence, the accused has appealed to this court for relief, and has based his complaints on several bills of exceptions, the first of which he has abandoned.

Article 90 of the Louisiana Criminal Code provides as follows:

"Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

"Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."

The wording of the information was: "* * * that Charles Damico on or about the 28th day of June, A. D., 1946, * * * did wilfully, maliciously and feloniously intentionally conduct and directly assist in conducting, as a business, a game, contest, * * * and contrivance whereby persons risked the loss of something of value, namely money, in order to realize a profit in money, wherein money, bets and wagers on the results of horse races were unlawfully accepted and made by the said Charles Damico, outside of the race track and enclosures and whereby persons risked the loss of money in order to realize a profit in money, contrary to the form of the Statute. * * *"

The defendant's second bill of exceptions was reserved to the overruling by the trial judge of a motion to quash the bill of information on the ground that it did not charge specifically that he had committed the crime of "gambling" as prohibited by Article 90 of the Louisiana Criminal Code.

A comparison of the allegations in the information with the contents of Article 90 of the Louisiana Criminal Code shows that the information charges clearly that the accused committed the acts which the article prohibits.

The wording of the information in. the present case is almost the same as that in the bill of particulars which was furnished in State v. Davis, 208 La. 954, 23 So.2d 801, 803, and which was declared in that case to be sufficient. The only difference between the case under consideration and the Davis case is that in the latter the defendant was originally charged briefly that he "did commit the crime of gambling as defined by Article 90 of the Louisiana Criminal Code," and that subsequently the district attorney voluntarily amplified the information by filing particulars in compliance with a motion by defense counsel; whereas in the present case the district attorney included in the information particulars similar to those requested in the Davis case.

The information in the present case complies with the provisions of Article 227 of the Louisiana Code of Criminal Procedure, and with the provisions of Section 10 of Article I of the Constitution of Louisiana of 1921, which provides that in all prosecutions, the accused shall be informed of the nature and cause of the accusation against him.

We find no merit in the defendant's second bill of exceptions.

We find it necessary to consider only three of defendant's other bills of exceptions. These relate to certain documents which the state offered in evidence as paraphernalia used by the accused in the operation of a gambling contrivance with reference to betting on horse-races in a manner prohibited by Article 90 of the Louisiana Criminal Code and as alleged in the information.

Although in criminal cases the Supreme Court's jurisdiction is restricted to questions of law, the facts recited herein and those referred to are considered by us because they are intimately connected with and related to questions of law raised by the bills of exceptions.

The first of these bills was reserved to the overruling of the defendant's objection when the district attorney offered the documents in evidence. The objection was based on several grounds, one of which was that the documents had not been properly identified. Then the judge stated that he wanted to familiarize himself with them,

and they were handed to him. The judge asked the district attorney: "Has any one explained these to you?" The district attorney replied: "I am going to question the chief," referring to Chief of Police George Gray.

■ The prosecuting attorney handed the chief of police, who had been sworn as a state witness, several documents bearing the date of the alleged offense, and asked him to examine them and tell the court, if he could, what the documents were. The chief after looking them over said that he did not know how he could describe them by name, but he could tell how they were used. He said that they were forms which were used in connection with horse-racing. Here the attorney for the defendant objected on the ground that the witness had not qualified as an expert. The trial judge overruled the objection, and counsel for the defendant reserved a bill of exceptions. Then the witness testified that one of the documents was a form used when horse-racing information was received from the track by ticker or telephone, regardless of where the races are run. Then the witness described the meaning of the several terms and expressions used in the documents which the state had introduced in evidence. Counsel for the defendant renewed his objection to the effect that the witness had not qualified as an expert and was not stating even the source of his information or the basis of his opinions. The judge again overruled the objection. Then

the judge permitted the witness to continue describing the documents in detail and to define the terms therein which are peculiar to horse-racing and the operation of hand-books on horse races; but the witness did not at any time show that he possessed any personal knowledge of the facts that he related nor the source of his information on which he based his opinion. Counsel for the defendant renewed his objection and the court again overruled it. The witness continued his testimony with such confidence and assurance of his competence and the correctness of his statements as to convey the impression that he knew what he was testifying about. The confidence and assurance with which a witness expresses his opinions on a subject in issue are not proof of his competency to express them and do not for that reason become admissible.

■ The entire testimony adduced at the trial of this case and the horse-racing documents which were admitted in evidence have been filed with and made part of the transcript of appeal. An examination of these shows that all the terms and other matters contained in the documents are not matters of common knowledge. The district attorney did not believe that they are; otherwise, he would not have had the chief of police interpret and define them for the court. Neither did the judge believe that they are matters of common knowledge, if he did, he would not have asked the district attorney if any one had

explained them to him, nor would he have used the following language in his per curiam to the defendant's bill of exceptions: "The chief of police explained to the court the racing forms which were seized at the time of the arrest as well as the other documents. The chief was familiar with these matters and satisfied the court that he was competent to testify and was seemingly very clear. It is my opinion that the evidence was clearly admissible." The judge's per curiam shows that he required the assistance of an expert to enable him to understand the contents of the documents. The chief of police had not qualified as an expert, nevertheless the judge permitted him to testify as such.

Article 463 of the Louisiana Code of Criminal Procedure provides as follows: "Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."

The exceptions referred to in Article 463 are stated in Article 464 of the Louisiana Code of Criminal Procedure which provides that, "On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony."

Article 465 of the Louisiana Code of Criminal Procedure is as follows: "Every expert witness must state the facts upon which his opinion is based."

Article 466 of the Louisiana Code of Criminal Procedure provides that, "The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."

As hereinbefore shown, the chief of police possessed no personal knowledge of the facts about which he testified. Some of his opinions were based on non-scientific or non-technical matters, and those opinions would have been admissible provided he had also stated the facts on which he had based them, which he did not do. State v. Winstead, 204 La. 366, 15 So. 2d 793. Most of the chief's other opinions were about questions involving knowledge obtained only by means of special training or experience. Before being permitted to express his opinions about the technicalities involving horse racing and the operation of hand-books thereon he should have been qualified as an expert on such questions.

In State v. McCall, 162 La. 471, 110 So. 723, 726, it was held that,

"The fitness of a witness to testify as an expert or to give an opinion is an independent fact, separate and apart from the merits of the case, which fact must be established as a condition precedent to the admissibility of the testimony. The court's ruling reserved to defendant every right,

in this respect, to which he was legally entitled. The rule which is recognized and enforced in every jurisdiction in this country is succinctly stated in C. J. vol. 22 p. 523, as follows:

" 'The competency of the witness, with respect to knowledge, and also with respect to special skill or experience, where this is required, is a preliminary question to be passed upon by the court before the testimony is received, at least, where objection is raised to the competency of the witness.' "

During argument before this court, the district attorney referred to State v. Normandale, 174 La. 835, 141 So. 851. This case is not helpful to the contention of the state for the reason that although a police officer was permitted therein by the trial judge to express his opinion as to whether or not a certain substance was marajuana, it was required by the trial judge that the police officer before being permitted to testify as an expert be qualified by its being shown that he was competent at least as a result of knowledge acquired from practical experience and observation in his work as a police officer.

The requirement contained in Article 466 of the Louisiana Code of Criminal Procedure that before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court is a clear mandate of the legislature and should be complied with by trial judges. The reason for the rule is obvious. If a witness is permitted to express opinions without first qualifying and the judge subsequently determines that he was not qualified to express such opinions there would be no way of determining to what extent either a judge or jury had been influenced by such testimony.

In State v. Howard, 120 La. 311, 45 So. 260, 263, the probable effect on a jury by the improper admission in evidence of expert testimony is stated as follows: "So far as we are informed, no other witness testified that three pistols were used, or as to the course of the bullets; but, were it otherwise, we should have no means of knowing whether the jury relied upon such testimony, or upon that of the expert relied on by the state, which was improperly admitted."

The learned trial judge erred when he overruled the defendant's objections, and permitted the chief of police to state his opinions as proof of the defendant's guilt before it was shown that he was competent to express them. There is no way of determining to what extent the trial judge in finding the accused guilty was influenced by the chief's inadmissible opinions. That he was influenced by them is shown by his per curiam hereinbefore quoted.

In as much as the conviction and sentence will have to be set aside and the case remanded for a new trial, we find it unnecessary to consider the remaining bills of exceptions.

The conviction and sentence are annulled, and the case is ordered remanded to the district court for a new trial.

HAWTHORNE, Justice (concurring in part and dissenting in part).

I fully concur with the majority opinion in holding that defendant's second bill of exception has no merit. I respectfully dissent, however, from the opinion of the majority that, because Chief of Police George Gray had not qualified as an expert witness and had not shown that he possessed any personal knowledge of the facts he related, or revealed the source of information on which he based his testimony, it was error for the district court to permit him to identify and explain certain documents used as paraphernalia by the accused in the operation of a handbook.

The documents introduced and filed in evidence, about which the witness was testifying, had been seized in defendant's place of business by the arresting officers on June 28, the date of the offense charged in the bill of information, and consisted of racing sheets, the Daily Racing Form, and tickets with numbers printed thereon.

The majority opinion reversed the district judge on his rulings on objections to certain questions propounded to the chief of police, as disclosed by Bills of Exception Nos. 6 and 7.

Bill of Exception No. 6 contains the following testimony: "Q. Chief, I hand you some of these documents that have been introduced, bearing the date June 28, 1946, and ask you to examine them and tell me, if you can, what they are. A. Well, I don't know I could describe it by proper name. I could tell you how it is used. It is a form that is used in connection with horse racing, particularly where the information is received—"

At this point in the witness's answer, counsel for defendant objected on the ground that the witness was not an expert; that, unless he had experience betting on horses, he was not qualified to answer.

In Bill of Exception No. 7, we find the following: "Q. The documents contained in the cigar box, do you know what part they played? A. Yes, sir, these are tickets that were issued. They were issued in duplicate, the man making the bet keeps one part of it."

To this question and answer defense counsel objected on the ground that the witness was giving his opinion as to something he did not know of his own personal knowledge.

Both of defendant's objections were overruled, and the witness then proceeded to identify and explain the documents about which he was being questioned. The trial judge's per curiam to Bill No. 6, which he states is applicable to Bill No. 7 also, reads as follows: "The Chief of Police explained to the Court the racing forms which were seized at the time of the arrest as well

as the other documents. The Chief was familiar with these matters and satisfied the Court that he was competent to testify and was seemingly very clear. It is my opinion that the evidence was clearly admissible."

There is no doubt whatsoever that the documents themselves were admissible in evidence. Furthermore, the objection is not aimed at this officer's testimony per se, but is based solely on the ground that he was not qualified to answer these questions. In my opinion, the documents speak for themselves, and it does not take an expert to identify or explain them. For instance, on the racing sheets, we find very plainly printed the name of the race track, post time, number and length of each race, and date, and on the Daily Racing Form the names of the various race tracks throughout the country, together with the names of the race horses, probable jockeys, their weights, probable odds, amount of purse, number of race, and other data. As to the tickets, the amount bet and whether the bet was made for the horse to win, place, or show were indicated thereon.

In my opinion, the testimony of the witness was not a conclusion or observation or deduction from facts; he was testifying simply to facts, as facts, for he very plainly stated as a fact what the various documents were.

In State v. Hollingsworth, 160 La. 26, 106 So. 662, 663, a witness for the State was asked the following question: "State whether or not this tincture of Jamaica ginger you bought from the defendant was fit for beverage purposes." This question was objected to by counsel for the defendant on the ground that it called for the opinion of the witness and that the proper foundation had not been laid; or, in other words, that the witness had not been qualified as an expert. The objection was overruled, and on appeal this court found that the ruling was correct, stating: "* * * the question whether or not an extract of Jamaica ginger be or be not fit for use as a beverage involves only a question of fact, dependant upon personal experience or observation, as to which any witness may testify without specially qualifying as an 'expert.' The extent of such experience or observation may, of course, be inquired into on cross-examination."

See also State v. Williams, 111 La. 205, 35 So. 521.

In the instant case, counsel for defendant did not cross-examine this witness as to the extent of his experience or observation in these matters, as counsel had a right to do.

The identification by the witness of the objects introduced by the State was testimony as to facts, and not opinion evidence. One does not have to be an expert witness or an experienced gambler to testify that a poker chip is a poker chip, and to explain how it is used in the game. Horse racing, the terminology used in connection there-

with, and the paraphernalia incident to betting on horse racing are not unusual things about which the public in general is totally ignorant. The Daily Racing Form, for instance, may be purchased at almost any newsstand. In my opinion, the testimony of the chief of police in regard to the documents was admissible as testimony of fact, and its sufficiency was a matter for the trial judge, who stated that the chief of police was familiar with these matters and satisfied the court that he was competent to testify. I do not find any manifest error in his ruling.

I respectfully dissent.

HAMITER, Justice (dissenting).

The objections urged to the identifying of the gambling forms by Chief of Police Gray were important only with reference to the weight to be accorded his evidence; they were without effect as to the admissibility of it. That official was not expressing an opinion as an expert. He was giving testimony relating to actual facts, about which he apparently possessed knowledge gained by personal experience and observation, just as any witness is permitted to do without qualifying as an expert. The extent of his experience and observation, of course, is a matter to be inquired into on cross examination and to be considered in the weighing of the evidence. State v. Williams, 111 La. 205, 35 So. 521; State v. Ryan, 122 La. 1095, 48 So. 537; State v.

Hollingsworth, 160 La. 26, 106 So. 662; Marr's Criminal Jurisprudence of Louisiana, Second Edition, Volume 2, Section 580.

I respectfully dissent.