427 So.2d 529 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ricky Wayne GOODMAN, Defendant-Appellant.
No. CR82-471.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*530 S. Michael Henry, Atty., Natchitoches, for defendant-appellant.
James L. Davis, Dist. Atty., and Stanley Goodwin, Asst. Dist. Atty., Many, for plaintiff-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOMENGEAUX, Judge.[*]
The defendant, Ricky Wayne Goodman, was charged by Bill of Information with the offense of aggravated crime against nature arising from an incident involving both oral sexual intercourse and sodomy with a twelve year old boy. At the time of the offense defendant was 27 years of age. Defendant initially pled not guilty to that charge, but, pursuant to a plea bargain with the District Attorney's office which did not involve any sentencing guarantees, he withdrew his not guilty plea and entered a plea of guilty to the reduced charge of simple crime against nature. Following a presentencing investigation, the trial judge sentenced defendant to five years at hard labor, the maximum imprisonment penalty for the crime to which he pled guilty. Defendant challenges the sentence imposed raising two assignments of error: (1) the trial court erred in imposing an excessive sentence in violation of La. Const. Art. 1, Sec. 20; and (2) the trial court erred by failing to follow and in applying the sentencing guidelines provided in La.C.Cr.P. Art. 894.1.
The facts of this case are primarily gleaned from an inspection of the presentencing investigation report, the contents of which are uncontested. In late February of 1982 defendant hired the twelve year old to help him repair fences, and while in a wooded area he performed upon the young boy the deviant sexual acts involving oral sexual intercourse and sodomy. The victim stated that he failed to resist from a fear that the older man would hurt him if he did so. Defendant, conversely, avers that both *531 parties acted voluntarily. The presentence investigation report also revealed previous criminal activities of defendant involving similar behavior. The 27 year old defendant had on one prior occasion with the same victim engaged in acts constituting indecent behavior with a juvenile. La.R.S. 14:81. Additionally, the report indicates that defendant had committed three or four offenses of oral sex and sodomy with the victim's older brother, who was also a juvenile. The acts involved and the ages of that victim and defendant are the necessary elements constituting other offenses of aggravated crime against nature. However, charges involving those crimes had not been brought, and they are not directly at issue.
Defendant's plea of not guilty to the initial charge of aggravated crime against nature (considered aggravated because of the victim's young age and the defendant's older age under La.R.S. 14:89.1(5))[1] was replaced by a guilty plea to the charge of simple crime against nature. La.R.S. 14:89.[2] The trial judge imposed the maximum imprisonment penalty provided, i.e., five years at hard labor. Defense counsel contests that sentence's severity, primarily alleging that the trial judge was unduly influenced by the initial charge and should have considered only the offense of simple crime against nature. For the sake of clarity both assignments have been joined into one discussion.
Defendant challenges the constitutionality of the sentence imposed, alleging that it was excessive in violation of La. Const. Art. 1, Section 20.[3] The Louisiana Constitution of 1974 added the word "excessive" to what had previously been Article 1, Section 12 of the 1921 Constitution, and five years later the Louisiana Supreme Court determined that a sentence imposed within the statutory guidelines was, nevertheless, reviewable for excessiveness as a question of law. State v. Sepulvado, 367 So.2d 762 (La. 1979).[4]
A sentence has been held to be constitutionally excessive when the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Reed, 409 So.2d 266 (La.1982); State v. Bonanno, 384 So.2d 355 (La.1980). Subjective differences among individuals create varying opinions as to the degree of severity merited by a particular crime and particular offense. Due to his unique position in viewing *532 factors not present on appeal, the trial judge is necessarily afforded wide discretion in imposing sentences within the statutory limits, and those sentences should not be deemed excessive unless he has manifestly abused his discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Fergus, 418 So.2d 594 (La.1982); State v. Washington, 414 So.2d 313 (La.1982).
Defendant also contends that the trial judge failed to consider the fact that he has a good work and employment history, and retained a favorable report from the examining psychiatrist who recommended against the defendant's incarceration.
At the sentencing hearing, the trial judge stated that he had considered the guidelines of La.C.Cr.P. Art. 894.1, and found that none of the eleven conditions set forth in paragraph B bear any weight of any significance in favor of a suspended sentence. Failure to strictly comply with C.Cr.P. Art. 894.1 does not ipso facto render a sentence invalid. In discussing the guidelines set out in C.Cr.P. Art. 894.1 our Supreme Court in State v. Lanclos, supra, stated:
"This court has held that although Article 894.1 provides useful guidelines for the determination of the nature and length of a sentence, compliance with its provisions is not an end in itself. State v. Wimberly, 414 So.2d 666 (La.1982). Article 894.1 is intended to provide an impartial set of guidelines within which the trial judge's sentencing discretion may be exercised. State v. Price, 403 So.2d 660 (La.1981); State v. Douglas, 389 So.2d 1263 (La. 1980). Compliance with Article 894.1 further provides a record which is detailed enough to allow for a reasoned review of allegedly excessive sentences. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed this court has held that remand is unnecessary, even where there has not been full compliance with Article 894.1. State v. Boatright, 406 So.2d 163 (La. 1981); State v. McDonald, 404 So.2d 889 (La.1981); State v. Martin, 400 So.2d 1063 (La.1981); State v. Douglas, supra."
In the instant case the trial judge in sentencing defendant expressly referred to the guidelines of 894.1. He noted that defendant's past actions created an undue risk that he would commit similar crimes should he be given a suspended sentence or released on probation. The sentencing judge believed that a custodial environment was necessary to shield society from defendant's behavior and that a lesser sentence would deprecate the seriousness of the odious and highly repugnant offense perpetrated by defendant.
Eleven mitigating grounds are listed in Sub-section B of 894.1. Finding the first six grounds inapplicable, the trial judge noted that (7) failed to mitigate in defendant's favor, as he had a prior juvenile record of unknown substance followed by a probationary period and as he had engaged in similar criminal behavior. Additionally, defendant had been arrested, but never prosecuted, on a theft charge in 1976. The remaining four grounds were, also, not considered applicable.
Despite the fact that the examining psychiatrist recommended probation for the defendant, the trial judge chose to ignore that report. An analogy to the rejection of the psychiatric report may be made to the discretion afforded the trial court in matters concerning the competency of experts to venture opinions within their fields of expertise. That discretion has been termed great and is to be upheld in the absence of a manifestly erroneous decision. State v. Rives, 407 So.2d 1195 (La.1981); State v. Walker, 394 So.2d 1181 (La.1981).
In examining the trial judge's refusal to follow or even to note the psychiatric recommendation, we observe that his opinion was derived from only one interview with the defendant and from personal facts obtained from that same defendant. Of importance, also, is the significantly different story told the psychiatrist regarding defendant's prior criminal action. The uncontested *533 presentence report indicated the existence of a signed statement by defendant admitting to three or four other acts of aggravated crime against nature, which he failed to relate during his psychiatric evaluation.
From the facts present, we cannot find that the trial judge manifestly erred in ignoring the psychiatrist's recommendation or prior work history. Balanced against the two aforementioned mitigating factors are: (1) Defendant had engaged in similar unlawful conduct in the past; (2) Defendant had a prior juvenile record; (3) The crime was committed upon a victim of a tender age;[5] (4) Defendant had already been afforded a considerable degree of leniency,[6] when he was allowed to plead guilty to a lesser offense; and (5) Defendant was unmarried and 27 years of age at the time of the crime. Additionally, the facts overwhelmingly support a conclusion that the defendant's actions constituted all of the elements required to be found guilty of aggravated crime against nature. The trial judge's failure to articulate consideration of mitigating factors does not change these facts. As aforementioned, the trial judge is given wide discretion in the imposition of sentences within statutory limits, and absent manifest abuse of that discretion the sentence imposed by the trial judge should not be set aside as excessive.
Our Supreme Court has held that maximum sentences are appropriate only in cases involving the most serious violation of the relevant statute and the worse type of offender. State v. Jones, 398 So.2d 1049 (La.1981). In a case such as this, where the offense to which the defendant has pled guilty inadequately describes his conduct, we find no abuse in the trial court's great discretion in imposing the maximum sentence possible for the crime to which a guilty plea is entered. This is particularly true where a significant reduction in potential exposure to imprisonment has been obtained through plea bargaining.[7]
For the above and foregoing reasons the sentence imposed by the trial court is maintained. The sentence and conviction are affirmed.
AFFIRMED.
DOMENGEAUX, J., files additionally a concurring opinion.
DOMENGEAUX, Judge, concurring.
Although I authored the majority opinion, I feel that I should file this concurring opinion in order to express my own views on the subject of appellate review of sentences as mandated by Sepulvado.
Respectfully, I suggest that Sepulvado has erroneously empowered our appellate courts to review criminal sentences to determine if those sentences are excessive. Our appellate court dockets have since become inundated by a tidal wave of appeals by convicted persons who are raping the integrity of our judicial system in an attempt to minimize or avoid the legislatively imposed punishments for their crimes, which I clearly feel was never intended by our 1974 Constitution.
I respectfully urge that our Supreme Court now re-evaluate Sepulvado, and the cases that follow it, overrule them, and restrict review only to laws which impose excessive sentences.
Louisiana Constitution Article 1, Section 20 of 1974 provides that:
"[N]o law shall subject any person ... to cruel, excessive or unusual punishment..." (Emphasis added).
*534 I agree with the dissenting Justices in Sepulvado, supra; State v. Tilley, 400 So.2d 1363 (La.1981), and State v. Touchet, 372 So.2d 1184 (La.1979), and consider that our review should be limited to whether the "law" subjects any person to excessive punishment, and not to whether a sentence in a particular case is excessive. To reason otherwise is to ignore all accepted concepts of statutory interpretation and constitutional construction.[1]
La.C.C. Article 13 provides:
"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
La.C.C. Article 14 further provides:
"The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammer rules as to the general and popular use of the words."
In the eyes of this writer Louisiana Constitution Article 1, Section 20, 1974, is so clear and unambiguous that it lends itself to but one interpretation. Under this Article there can be no doubt that our appellate courts are limited to a review of "laws" in which the Legislature imposed a sentence which was highly disproportionate and constitutionally out of reasonable connexity to the severity of the crime, and not to the individual sentences themselves. Any contrary holding can only be achieved by disregarding rules of statutory interpretation set forth in Articles 13 through 20 of the Louisiana Civil Code. The Constitutional provision, among other things, provides clearly and unambiguously that no law shall subject any person to excessive punishment. How much clearer can that language be? In such a case we should not decide constitutional questions on the basis of the debates of the delegates, nor processes designed to seek out a contrary intent of those delegates. This admonition is very aptly set out by our Supreme Court in the case of Bank of New Orleans and Trust Company v. Seavey, supra, at footnote 1.
However, assuming arguendo that Article 1, Section 20 might lend itself to a different interpretation, which I vehemently deny, I suggest the interpretation reached by the Sepulvado Court is in direct conflict with the intent of the Article's enactors, and violates the above cited civilian rules of statutory interpretation.
The majority in Sepulvado, recognizing the difficulties in avoiding the clear wording of Article 1, Section 20 premised their decision primarily upon two basis: (1) the significance of the change from Article 1, Section 12 of the 1921 Louisiana Constitution, to the present constitutional provision; and (2) the great deal of emphasis placed by the Court on the intent of the delegates in adopting Article 1, Section 20 at the 1974 Constitutional convention. Article 1, Section 12 of our former Constitution of 1921, which tracks the language of the Eighth Amendment of the U.S. Constitution, provided:
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted ...."
Under the 1921 Constitutional Article our Supreme Court declined to review sentences for excessiveness. State v. Polk, 258 La. 738, 247 So.2d 853 (1971). However, the Sepulvado Court grasped upon the inclusion of the word "excessive" in the 1974 constitutional Article, and, under the semblance of constitutional construction, determined that the new Article allowed judicial review of criminal sentences. In so doing, I respectfully suggest that our high court fell into error.
It is particularly significant that in addition to adding the word "excessive" to Article 1, Section 20 of the 1974 Constitution, the new Article was also altered to provide *535 that "no law shall subject any person to ... excessive ... punishment." It appears that the former 1921 Article would have less strenuously lent itself to an interpretation allowing for judicial review of sentences, but as aforementioned it did not. I think the change in our constitutional provision adding the words "no law" in place of "no person" clearly shows an intent to limit judicial review to a review of the laws in which the Legislature may impose too great a sentence. Accordingly, under our civilian rules of statutory interpretation, which mandate adhering to the letter of the law when that law is not dubious, the appellate courts should so limit their review.[2] The Legislative history of Article 1, Section 20 of the 1974 Constitution, contrary to the position forwarded in Sepulvado, supports this view.
In Sepulvado, supra, then Justice Tate in addressing the legislative history of Article 1, Section 20 of the 1974 Louisiana Constitution made the following observations:
"The convention floor debate transcripts reflect that Delegate Weiss had been assigned as the floor manager for the section on the Right to Humane Treatment. Documents of the La. Const'l Convention of 1973 Relative to the Administration of Criminal Justice 929-30 (La. Const'l Records Comm'n). Delegate Willis asked him if the clause would `not allow me to appeal and have the judge review a sentence on the grounds that the sentence is excessive and so the punishment is excessive?' Delegate Weiss answered `yes,' but suggested that `an amendment is forthcoming in this regard.' Records of the La. Const'l Convention of 1973: Convention Transcripts 1190 (44th day Proceedings, Sept. 8, 1973) (La. Const'l Records Comm'n); Documents, cited above, at 690. The clause was never amended, however; and the availability of individual sentence review stands as intended within the original wording." (Emphasis added).
With all due respect I submit that the above cited passage does not accurately depict the conversation that transpired. Verbatim the transcript of the colloquy between the constitutional delegates reads as follows:
"MR. WILLIS
My next question, you use the word `excessive punishments'. Would that not allow me to appeal and have the judge review a sentence on the grounds that the sentence is excessive and so the punishment excessive?
MR. WEISS
Yes, but it was not the intent of the committee to question this aspect, but rather `excessive punishments' ....
MR. WILLIS
But the prospect is present, is it not?
MR. WEISS
Yes, and here again an amendment is forthcoming in this regard." (Emphasis added).
The amendment spoken of by Mr. Weiss in the last sentence of the aforecited passage refers to an upcoming amendment (found at page 50 of the transcripts) to change Article 1, Section 20 which then read:
"No person shall be subject to euthanasia, torture, or cruel, unusual or excessive punishments or treatments, ..." (Emphasis added).
to
"No law shall subject any person to euthanasia, torture, or cruel, unusual or excessive punishments ..." (Emphasis added).
Contrary to the position taken by Justice Tate in Sepulvado, (i.e., that the clause was never amended), the clause was amended from "No person ..." to "No law ..." See pages 53 and 63 of the transcript.[3]
*536 Additionally, the delegates' intent to restrict judicial review to the constitutionality of laws which prescribe excessive sentences, and not of the individual sentences imposed, is further supported at page 50 of the transcripts where Mr. Weiss states:
"... [T]he fact that many delegates voted for the Zervigon proposal because it involved, perhaps, some personal problems in which the committee used the words, `no person.' The intent was that `no law' ... that is no legislative act or law would permit or subject individuals to either euthanasia, torture, cruel, excessive or unusual punishment..."
Finally, in response to the two Louisiana Law Review commentaries cited in Sepulvado as support for the Court's ruling, I feel that the position taken by those commentators is clearly erroneous.[4] In those commentaries both writers agree that the intent of the delegates to the constitutional convention was to prohibit the Legislature of the State of Louisiana from enacting a law which would subject a person to euthanasia. Contrarily, and in complete derogation of the rules of constitutional interpretation, the writers then proclaimed that the new Article allowed judicial review not of the law which allows for the imposition of excessive sentences, but of the actual sentences imposed by the trial judge. Obviously, if "no law", as interpreted applies to legislative acts when speaking of euthanasia, the same must hold true when one speaks in terms of excessive punishment. In order to determine that a sentence is unconstitutional it is necessary to determine that the criminal statute itself allows for a punishment which is highly disproportionate and constitutionally out of reasonable connexity to the severity of the crime.
Our Constitution simply does not allow judicial review of sentences when those sentences fall within the purview set by the respective criminal statute, and the referred to cases which say that it does, should now be overruled by our Supreme Court.
Accordingly, I respectfully concur.
NOTES
[*] For reasons stated therein, the writer of this opinion has also filed a concurring opinion.
[1] La.R.S. 14:89.1(5) provides:

"Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
* * * * * *
(5) Where the victim is under the age of seventeen years and the offender is at least three years older than the victim.
Whoever commits the crime of aggravated crime against nature shall be imprisoned at hard labor for not less than three nor more than fifteen years, such prison sentence to be without benefit of suspension of sentence, probation or parole."
[2] Acts 1982, No. 703 (effective September 10, 1982) amended R.S. 14:89 but is not pertinent to this discussion. The statute at the time of the offense read as follows:

"Crime against nature is the unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:41.1, 14:42, or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
Whoever commits the crime against nature shall be fined not more than two thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both."
[3] "No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." Art. 1, § 20.
[4] Not all are in agreement with this authority to review. See this writer's concurring opinion; Sepulvado, supra, at 773 (Marcus, Justice, dissenting); State v. Tilley, 400 So.2d 1363, 1368 (La. 1981) (Marvin, Justice, Ad Hoc, dissenting); and State v. Touchet, 372 So.2d 1184, 1185 (La. 1979) (Summers, Justice, dissenting). Notwithstanding these views, the Sepulvado opinion remains the position taken by our Supreme Court.
[5] See e.g. State v. Smith, 404 So.2d 210 (La. 1981); State v. Acliese, 403 So.2d 665 (La. 1981); Sepulvado, supra, at 767.
[6] State v. Lanclos, supra; State v. Washington, supra.
[7] The penalty for crime against nature to which defendant pled guilty is a maximum fine of

Two Thousand Dollars or imprisonment "with or without hard labor, for not more than five years, or both." Parole is available to defendants convicted of crime against nature, unlike the counterpart statute addressing aggravated crime against nature, which also imposes imprisonment for not less than three nor more than fifteen years.
[1] The rules on statutory interpretation are also applicable to the interpretation of Constitutional provisions, and where language of the Constitution is clear and unmistakably expresses the intent of its framers, it is the duty of the Courts to apply its provisions literally. Bank of New Orleans and Trust Company v. Seavey, 383 So.2d 354 (La.1980); Scott v. Ratcliff, 167 La. 237, 119 So. 33 (1928); Orleans Parish School Board v. Murphy, 156 La. 925, 101 So. 268 (1924).
[2] See Bank of New Orleans and Trust Company, supra, at footnote 1.
[3] At page 53 of the transcript of the Constitutional Convention the delegates present voted 59 to 38 to adopt the amendment changing "No person" to "No law". Additionally, at page 63 the final vote was taken on Article 1, Section 20, adopting the Article as it now reads by a vote of 88 to 16.
[4] 35 La.L.Rev. 1 (1974); 21 Loy.L.Rev. 9 (1975).