438 So.2d 1166 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Claude SHELBY, Jr., Defendant-Appellant.
No. CR83-63.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
*1167 Don Burkett and Edward Chevallier, Self & Burkett, Many, for defendant-appellant.
James L. Davis, Dist. Atty., Many, Abbott J. Reeves, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.[*]
Defendant Claude Shelby, Jr. was indicted by the Sabine Parish Grand Jury on one count of cruelty to juveniles, a violation of La.R.S. 14:93.[1] The defendant initially pleaded not guilty to the charge, but later appeared before the district judge in order to withdraw such plea and enter a plea of guilty. After carefully determining that the latter plea was made freely and voluntarily on the defendant's part, the court accepted his plea of guilty. Thereafter, pursuant to a pre-sentence investigation, the defendant was given a three year suspended sentence at hard labor with the Department of Corrections, and was placed on supervised probation for a period of four years. A special condition of that probation was that the defendant serve six months in the parish jail. The defendant thereafter appealed the sentence imposed by the district court.
On appeal, the defendant perfected two assignments of error, to-wit: that the trial court erred in improperly considering the factors set forth as sentence guidelines in La.C.Cr.P. Art. 894.1; and, that the trial court erred in imposing a six months jail sentence, which sentence is excessive and violates the provisions of the Louisiana Constitution of 1974. In support of these assignments, the defendant relies specifically on the decision of our Supreme Court in State v. Sepulvado, 367 So.2d 762 (La.1979), which chose to interpret Article 1, Section 20 of the Louisiana Constitution of 1974[2] in such a manner that a sentence imposed within the statutory guidelines is, nevertheless, deemed to be reviewable on appeal for excessiveness.[3]
Our jurisprudence has held that a sentence is constitutionally excessive when the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983); State v. Reed, 409 So.2d 266 (La.1982). However, due to the trial judge's unique position of reviewing subjective factors not available on appeal, he is given a wide discretion in the imposition of sentences within the statutory limits, and a *1168 sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. Sepulvado and Goodman, supra; State v. Howard, 414 So.2d 1210 (La.1982); State v. Bradley, 414 So.2d 724 (La.1982).
The facts involved in this case are discernable only from the transcript of the proceedings surrounding the defendant's guilty plea, as well as from the sentencing proceedings. Apparently, the defendant had been living with one Belinda Maxey and was with her at her house at the time of the alleged incident, with his vehicle parked in her driveway. Several children were playing in the driveway at that time, and at some point during their play, a fog light was either broken or knocked off of the defendant's car. According to statements made by the defendant, Ms. Maxey then instructed him to "go on and whip" the child who had broken the light, and the defendant admittedly proceeded to do such. The child was taken thereafter to a hospital emergency room, but was not hospitalized.
The trial judge, during sentencing proceedings, analyzed the pre-sentence investigation report on the defendant in light of those factors and considerations set forth in La.C.Cr.P. Art. 894.1, and concluded that the portions of that Article setting forth the different types of mitigating factors to be taken into account in imposing a sentence were controlling. Particularly, he noted that the defendant had no previous criminal convictions of any significance, the only one being a citation for an expired inspection sticker. However, in light of the fact that the actions taken by the defendant were deemed to be in excess of the bounds of reasonable discipline of the child, the judge chose to impose the six months terms of incarceration appealed by the defendant herein.
In State v. Lanclos, 419 So.2d 475 (La. 1982), the Supreme Court made the following comments concerning the necessity of rigid compliance with the provisions of La. C.Cr.P. Article 894.1:
"However, the trial judge's failure to comply with Article 894.1 does not automatically render a sentence invalid. This court has held that although Article 894.1 provides useful guidelines for the determination of the nature and length of a sentence, compliance with its provisions is not an end in itself.... Article 894.1 is intended to provide an impartial set of guidelines within which the trial judge's sentencing discretion may be exercised.... Compliance with Article 894.1 further provides a record which is detailed enough to allow for a reasoned review of allegedly excessive sentences. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed this court has held that remand is unnecessary, even where there has not been full compliance with Article 894.1...." (Citations omitted)
The defendant maintains on appeal that in imposing sentence, the trial judge did not carefully consider a number of the mitigating factors delineated in La.C.Cr.P. Art. 894.1 in light of the set of uncontradicted facts which were presented in court. Additionally, he argues that since he has virtually no criminal record, and that because forcing him to serve a six months jail term will cause him to lose his job, the income from which is vitally needed in order for him to help support his sister and her children, the six month term of incarceration imposed by the trial judge should be set aside and vacated.
We find no merit in the defendant's contentions. It is quite evident from the transcript of the sentencing proceedings that the district judge carefully and fairly considered the provisions of La.C.Cr.P. 894.1 in reaching his decision concerning the sentence to be imposed upon the defendant. Considering the fact that the defendant could conceivably have been sentenced to a term of ten years imprisonment under La. R.S. 14:93, we can hardly view a six month jail term excessive under the facts of this case.
*1169 From a legal standpoint we are also unpersuaded by the defendant's assertion that members of his family will suffer financial hardship if he is forced to go to jail. Unfortunately, the possibility of job loss and financial difficulties is confronted by virtually any individual who may be facing a jail sentence. We have discovered no unusual or extenuating circumstances in this situation which warrant mitigation of the defendant's sentence on this account.
Finally, under the standard enunciated in Sepulvado, supra, we are unable to find any manifest abuse of discretion in the decision of the district judge to impose a six month jail term upon the defendant. Thus, we will not disturb the sentence on appeal.
For the above reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
DOMENGEAUX, Judge, concurring.
Although I authored the majority opinion, I again feel that it is necessary to reiterate the position that I stated previously in my concurring opinions in State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir. 1983), and State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), writ denied. Therein I espoused the position that our new Constitution does not provide for nor mandate judicial review of sentences which fall within the limits set by the respective criminal statutes, contrary to the dictates of our Supreme Court in State v. Sepulvado. Once again, I reiterate that Article 1, Section 20 of the Louisiana Constitution of 1974 restricts appellate review specifically to laws which impose excessive sentences.
However, in a startling development, the United States Supreme Court, in a 5 to 4 decision, has seen fit to justify appellate review of sentences under the Cruel and Unusual Punishments clause of the Eighth Amendment of the United States Constitution. See Solem v. Helm, ___ U.S. ___, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In that case, the defendant had been sentenced to life imprisonment without benefit of parole under the South Dakota "recidivist statute" for commission of his seventh non-violent felonypassing a worthless check. The Supreme Court determined "... as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted....", and thereby held that the defendant's sentence was grossly disproportionate to his crime, and that the sentence was prohibited by the Eighth Amendment.
While my previous views on Sepulvado and its interpretation of our own Constitution are not compromised in any way by the Solem decision, I nevertheless feel that it is necessary for me to address the issues discussed in Solem insofar as their potential impact on our state criminal justice system is concerned.
In Solem, Justice Powell, writing for the majority, developed the following criteria to be employed by a Court in determining whether or not a criminal sentence is proportionate to the crime for which the defendant has been convicted.
"In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."
However, in a scathing dissenting opinion by Chief Justice Burger, joined by Justice White, Justice Rehnquist, and Justice O'Connor, the Chief Justice perceptively challenged the "proportional analysis" adopted by the majority:
"The Court's traditional abstention from reviewing sentences of imprisonment to ensure that punishment is `proportionate' to the crime is well founded in history, in prudential considerations, and in traditions of comity. Today's conclusion by five Justices that they are able to say that one offense has less `gravity' than another is nothing other than a bald substitution of individual subjective moral values for those of the legislature. *1170 Nor, as this case well illustrates, are we endowed with Solomonic wisdom that permits us to draw principled distinctions between sentences of different length for a chronic `repeater' who has demonstrated that he will not abide by the law.
The simple truth is that `(n)o neutral principle of adjudication permits a federal court to hold that in a given situation individual crimes are too trivial in relation to the punishment imposed.' Rummel v. Estelle, 568 F.2d 1193, 1201-1202 (CA5) (Thornberry, J., dissenting), vacated, 587 F.2d 651 (CA5 1979) (en banc), aff'd, 445 U.S. 263 [100 S.Ct. 1133, 63 L.Ed.2d 382] (1980). The apportionment of punishment entails, in Justice Frankfurter's words, `peculiarly questions of legislative policy.' Gore v. United States, 357 U.S. 386, 393 [78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405] (1958). Legislatures are far better equipped than we are to balance the competing penal and public interests and to draw the essentially arbitrary lines between appropriate sentences for different crimes.
By asserting the power to review sentences of imprisonment for excessiveness the Court launches into uncharted and unchartable waters. Today it holds that a sentence of life imprisonment, without the possibility of parole, is excessive punishment for a seventh allegedly `nonviolent' felony. How about the eighth `nonviolent' felony? The ninth? The Twelfth? Suppose one offense was a simple assault? Or selling liquor to a minor? Or statutory rape? Or price-fixing? The permutations are endless and the Court's opinion is bankrupt of realistic guiding principles. Instead, it casually lists several allegedly `objective' factors and arbitrarily asserts that they show respondent's sentence to be `significantly disproportionate' to his crimes. Ante, [103 S.Ct.] at 3016. Must all these factors be present in order to hold a sentence excessive under the Eighth Amendment? How are they to be weighed against each other? Suppose several States punish severely a crime that the Court views as trivial or petty? I can see no limiting principle in the Court's holding.
There is a real risk that this holding will flood the appellate courts with cases in which equally arbitrary lines must be drawn. It is no answer to say that appellate courts must review criminal convictions in any event; up to now, that review has been on the validity of the judgment, not the sentence. The vast majority of criminal cases are disposed of by pleas of guilty, and ordinarily there is no appellate review in such cases. To require appellate review of all sentences of imprisonmentas the Court's opinion necessarily doeswill `administer the coupe de grace to the courts of appeal as we know them'. H. Friendly, Federal Jurisdiction: A General View 36 (1973). This is judicial usurpation with a vengeance; Congress has pondered for decades the concept of appellate review of sentences and has hesitated to act."
It is interesting to note that in Solem, Justice Powell was compelled to distinguish the Supreme Court's previous holding in Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), in which the Court, in a 5 to 4 decision, had determined that a mandatory life sentence imposed upon the defendant pursuant to the provisions of the Texas "recidivist statute" for commission of a third non-violent felony did not constitute cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution. Justice Powell drew the distinction between the two cases merely upon the proposition that the defendant's sentence in Rummel was subject to the possibility of parole, while Helm's sentence in Solem was not subject to parole and could be reduced only by "an ad hoc exercise of executive clemency".
However, in his dissent in Solem, Chief Justice Burger correctly challenged Justice Powell's distinction of the Rummel case, in which the defendant had been previously convicted of fraudulent use of a credit card to obtain $80.00 worth of goods and services and passing a forged check in the amount of $28.36, before being convicted of a third *1171 felony, obtaining $120.75 by false pretenses. Chief Justice Burger stated in his dissent:
"The differences between this case and Rummel are insubstantial. First, Rummel committed three truly nonviolent felonies, while respondent, as noted at the outset, committed seven felonies, four of which cannot fairly be characterized as `nonviolent'. At the very least, respondent's burglaries and his third-offense drunk driving posed real risk of serious harm to others. It is sheer fortuity that the places respondent burglarized were unoccupied and that he killed no pedestrians while behind the wheel. What would have happened if a guard had been on duty during the burglaries is a matter of speculation, but the possibilities shatter the notion that respondent's crimes were innocuous, inconsequential, minor, or `nonviolent'. Four of respondent's crimes, I repeat, had harsh potentialities for violence. Respondent, far more than Rummel, has demonstrated his inability to bring his conduct into conformity with the minimum standards of civilized society. Clearly, this difference demolishes any semblance of logic in the Court's conclusion that respondent's sentence constitutes cruel and unusual punishment although Rummel's did not."
The four dissenters in Rummel, Justice Powell, Justice Brennan, Justice Marshall, and Justice Stevens, were all members of the majority in Solem. However, in a rather curious anomaly, Justice Blackmun, who had voted with the majority in Rummel, decided to change his prior position and joined Justices Powell, Brennan, Marshall, and Stevens, in the majority decision in Solem. Thus, Justice Blackmun's unexplained "change of heart" proved to be the key vote in the Solem decision, and thereby effectively paved the way for appellate review of criminal sentences pursuant to the Eighth Amendment of the U.S. Constitution.
Nevertheless, I am in full agreement with the dissenters in Solem, and their challenge of the majority's assertion of power to review criminal sentences for excessiveness. Respectfully, I would add that in my opinion, the key issue in Solem was not whether or not the defendant's individual sentence was excessive, but whether or not the South Dakota recidivist statute was unconstitutional. As shown in the majority opinion, the defendant's sentence was clearly within the limits provided by law. Therefore, if the defendant's term of incarceration is viewed to be excessive in light of the lack of severity of the crimes committed, then the problem lies with the law which allows such sentence, rather than merely with the sentence itself. Such laws should be compelled to survive constitutional muster, instead of forcing appellate courts to make erratic value judgments on sentences falling within the purview of the law.
This view is of course consistent with the arguments I propounded in Goodman and Vallare. But more importantly, it is consistent with the proposition expressly recognized in the dissenting opinion in Solem that "... legislatures are far better equipped than we are to balance the competing penal and public interest and to draw the essentially arbitrary lines between appropriate sentences for different crimes."
Unfortunately, the risk noted by Chief Justice Burger that Solem "... will flood the appellate courts with cases in which equally arbitrary lines must be drawn ..." has already become reality in the Louisiana Courts of Appeal due to the holding of our Supreme Court in Sepulvado. The U.S. Supreme Court's decision in Solem will almost certainly exacerbate what has already become a critical situation in the criminal justice system of our State.
NOTES
[*] For the reasons stated therein, the author of this opinion has also filed a concurring opinion.
[1] La.R.S. 14:93 provides:

"Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
Whoever commits the crime of cruelty to juveniles shall be fined not more than one thousand dollars, or imprisoned for not more than ten years, with or without hard labor, or both."
[2] La. Const. Art. 1, Section 20 provides:

"No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense."
[3] Not all are in agreement with this authority of appellate courts to review such excessive sentences. In particular, see this writer's concurring opinions in State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), and State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), writ denied, as well as the concurring opinion filed herein. Also, see Sepulvado, supra, at page 773 (Marcus, J., dissenting); State v. Tilley, 400 So.2d 1363, 1368 (La.1981) (Marvin, Justice Ad Hoc, dissenting); State v. Touchet, 372 So.2d 1184, 1185 (La.1979) (Summers, J., dissenting); and State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983) (Lottinger, Cole and Carter, JJ., Specially Concurring). Notwithstanding these views, however, the Sepulvado opinion remains the position taken by our Supreme Court.