438 So.2d 1188 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Darnell Jerome HUNTLEY, Defendant-Appellant.
No. CR83-20.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
*1190 John M. Crochet, Rogers, St. Romain & Oubre, Lake Charles, for defendant-appellant.
Louis G. Garrot, Asst. Dist. Atty., Abbeville, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.[*]
Defendant, Darnell Jerome Huntley, was charged by grand jury indictment with one count of first degree murder, a violation of LSA-R.S. 14:30. He was tried by jury and found guilty as charged on September 30, 1982. The district judge sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, suspension or commutation of sentence. Defendant appeals the verdict and sentence, and presents fifteen assignments of error.

FACTS
On February 26, 1980, Abbeville City Police Officers discovered the body of Mrs. Helen Wright inside her small grocery store. Mrs. Wright, an elderly woman, had been killed by a blow to the head administered *1191 by a piece of galvanized pipe which was later discovered approximately fifty feet away from the store. A bank money bag missing from the store's register was found discarded in a vacant lot near defendant's home. The State's case against the defendant was based largely on circumstantial evidence. Two women sighted defendant about a block away from the Wright store and walking with a short piece of pipe in his hand. The driver of the car, defendant's aunt by marriage, stated that defendant recognized her car and made an attempt to conceal the pipe. Defendant's cousin and long-time friend testified that sometime between 11:15 A.M. and 11:30 A.M. they observed defendant running down a path leading away from the Wright store and that they within minutes heard sirens. A report filed by Acadian Ambulance Service states that an ambulance arrived at the scene at 11:33 A.M.
Perhaps most damaging to defendant's case was the testimony of Ms. Alverta Maze. She stated that at approximately 1:30 P.M. on the day of the murder defendant came over to her mother's house and made some inculpatory statements. According to Ms. Maze the defendant told her, "I didn't mean it. Mrs. Wright had a big hole in her head. I don't know what's the matter with me."
In his own defense, defendant testified that he spent most of the morning of February 26th at home watching television. He stated that he left the house only once for approximately ten minutes to buy some cigarettes at a nearby lounge. He denied frequenting the victim's store on that particular morning.

ARGUMENTATION
Assignment of Error No. 1
The defendant assigns as error the trial court's denial of his motion to quash based on the grounds that defendant was a juvenile at the time the offense was committed. It is the defendant's contention that Article 5, § 19 of the 1974 Louisiana Constitution, as amended by Act 801,[1] of 1979, granted exclusive jurisdiction over juveniles to the juvenile courts unless the legislature by a two-thirds vote enacts laws which would provide for the trial of juveniles by adult procedures. Defendant further contends no such enabling legislation was in effect and thus defendant asserts that the district court lacked jurisdiction over him.
It is defendant's contention that Act 801 invalidated all existing statutes governing the jurisdiction of district courts over juveniles. He argues that although the aforesaid amendment empowered the legislature to enact statutory exceptions to the general provision, it did not do so until the adoption of Act 482 of 1980 which amended LSA-R.S. 13:1570A(5). He points out that the subject crime was committed after the date of the constitutional amendment but prior to the adoption of Act 482 of 1980 and therefore concludes that the district court lacked jurisdiction over him.
This argument has previously been addressed and rejected by the Louisiana Supreme Court. State v. Bowden, 406 So.2d 1316 (La.1981). In Bowden, supra, the *1192 Court held that the adoption of the 1979 amendment to LSA-Const. art. 5, § 19 did not have the effect of abrogating provisions of LSA-R.S. 13:1570 and 13:1571.1 et seq., governing initiation of prosecution of juveniles in district court and transfer proceedings from juvenile court to district court. Nor did the adoption of the amendment require re-enactment of such statutes, in that the amendment invalidated only such laws as were in conflict therewith and neither LSA-R.S. 13:1570 nor 13:1571, et seq., conflicted with the amendment. Id.
LSA-R.S. 13:1570 as it existed before its 1980 amendment read in pertinent part:
"Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:
* * * * * *
(5) Who violates any law or ordinance, except a child charged with having committed a capital crime or a crime defined by any law defining attempted aggravated rape after having become fifteen years of age. However, the court shall have exclusive original jurisdiction concerning any child who violates any law or ordinance except a child fifteen years of age or older charged with a capital crime or assault with intent to commit aggravated rape." (Emphasis added).
Defendant was fifteen years of age at the time he was charged with first degree murder, a capital offense, and therefore the district court had jurisdiction over him. For these reasons this assignment lacks merit.
Assignment of Error No. 2
Defendant argues that he was denied due process and equal protection of the laws on account of his age by operation of the LSA-R.S. 13:1570, laws governing juvenile transfer to district court. That statute, he maintains, precluded him from entering into a plea bargain agreement with the State.
LSA-R.S. 13:1570(A)(5) involves neither a "suspect classification" nor a "fundamental right" and therefore will survive a constitutional attack based on equal protection and due process if it is not arbitrary and bears a rational relationship to a legitimate State interest. State v. Petrovich, 396 So.2d 1318, 1322 (La.1981); State v. Leach, 425 So.2d 1232, 1236 (La.1983); Everett v. Goldman, 359 So.2d 1256 (La. 1978). In Leach, supra at 1236, the Court held:
"[T]he classifications embodied [in LSA-R.S. 13:1570(A)(5)] are not arbitrary and bear a rational relationship to a legitimate State interest, the protection of its citizens by exposing older minors who are accused of committing serious and violent felonies to the usual procedures and sanctions of the state's criminal law systems."[2]
This assignment is meritless.
Assignment of Error No. 3
Defendant contends that the trial court erred in denying his motion to question each potential juror outside the presence of the jury venire and selected jurors.
In State v. Vaccaro, 411 So.2d 415 at 426 (La.1982), the Court stated:
"In selecting a petit jury panel, details such as whether the jurors should be called singly or by groups are left to the trial court's discretion. The calling of prospective jurors in groups rather than singly, and their examination in the presence of each other does not, in the absence of special circumstances, deny a defendant a fair trial. The burden is on the defendant to show special circumstances indicating why individual voir dire or sequestration of jurors during voir dire is warranted."
*1193 Defendant has not carried his burden of demonstrating that special circumstances warranted individual voir dire examination and therefore the trial court's discretion will not be interfered with. There is no merit in this assignment.
Assignments of Error Nos. 4 and 5
Defendant asserts that the trial court erred in, (1) failing to swear in each juror as he or she was selected; and (2) in allowing unsworn jurors to be sequestered along with sworn jurors.[3] He contends that juror Wayne Toups was accepted by the State and defense but was not sworn in until after a short court recess during which time he was allowed to mingle with other sequestered sworn in jurors. Additionally, he points out that the trial record fails to reflect that jurors Michael Labit and Andrew Rizzuto, Jr., were ever sworn in at all. Thus, he claims, the sequestration rule was abridged as these three jurors were in effect constituting outside communication.
The Louisiana Code of Criminal Procedure requires that a prospective juror be immediately sworn in after being accepted by the State and the defense. LSA-C.Cr.P. art. 788. In capital cases, after each juror is sworn he must be sequestered. LSA-C. Cr.P. art. 791. The purpose of sequestration, of course, being to seclude the jurors from outside communication. Ibid.
The trial judge's failure to administer the oath to juror Wayne Toups immediately after he was chosen was a technical violation of the governing statutes but because he was sequestered at all times, no prejudice was suffered by defendant. See State v. Hunter, 340 So.2d 226 (La.1976). Defendant's assertion that during the recess Toups was in effect an outside influence on the other sequestered jurors is without merit. Nor is there any merit in defendant's assertion that jurors Michael Labit and Andrew Rizzuto, Jr., were never sworn. The record reflects that both men were administered the oath. These assignments have no merit.
Assignment of Error No. 6
Defendant contends that the trial court erred in not granting his motion for mistrial based on the clerk's inadvertent reading of a minute entry relating to the unrelated case against defendant's brother, State v. Lawrence Wayne Huntley.
At the opening of trial the minute clerk mistakenly announced the case as "State of Louisiana versus Lawrence Wayne Huntley." Defense counsel immediately objected and requested that the jury be removed from the courtroom. Out of the jury's presence, defense counsel objected to the reading of his client's brother's name. It was his contention that the jury would remember that Lawrence Wayne Huntley had been convicted of a similar crime and thus be prejudiced toward defendant. The trial judge denied defendant's request for a mistrial but agreed to have the indictment reread to the jury with the correct name.
LSA-C.Cr.P. art. 775 states in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial...."
Under these circumstances we find that defendant's assertion that he was prejudiced by the erroneous reading of the indictment is purely speculative and unsupported by the record. Therefore, a mistrial was not warranted. This assignment is devoid of merit.
Assignment of Error No. 7
Defendant asserts that the trial court erred in allowing the prosecutor to display the alleged murder weapon to the jury during his redirect examination of Marion Greene because: (1) no foundation had been laid to justify displaying the pipe in the presence of the jury; and (2) the questioning concerning the identification of the pipe *1194 by the witness exceeded the scope of cross examination and therefore this was an improper redirect examination topic.
LSA-C.Cr.P. art. 773 states:
"Neither the State nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible."
LSA-R.S. 15:281 provides:
"The redirect examination must be confined to the subject matter of the cross examination and to the explanation of statements elicited on cross examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect."
We find no merit in either ground for defendant's objection. The record indicates that defense counsel brought up the subject of the murder weapon on cross examination and therefore its discussion on redirect was proper. Moreover, the piece of pipe identified at trial by Ms. Greene to be similar to the one defendant was carrying on the day in question was later in the trial positively identified to be the murder weapon by crime lab experts. Therefore its admittance into evidence was not prejudicial error. LSA-C.Cr.P. art. 921. This assignment is without merit.
Assignment of Error No. 8
Defendant complains that the trial court erred in allowing the State to cross examine the defendant concerning inculpatory statements the defendant allegedly made without laying a sufficient foundation.
In the case at bar, the State called as a witness Ms. Alverta Maze to testify about inculpatory statements made to her shortly after the murder. Ms. Maze had previously given the police a written statement wherein she claimed that at approximately 1:00 P.M. on the day of the crime defendant called upon her at her mother's house and in a shaken state told her that "He didn't mean it ... she had a big hole in her head... he didn't know what was the matter with him."
The State was initially unsuccessful in eliciting this testimony from Ms. Maze on the witness stand. She literally froze upon being called and refused to speak. Her persistent silence prevented the court from swearing her in and after several warnings from the trial judge, she was held in contempt of court and led out of the courtroom.
Unable to persuade Ms. Maze to testify during its case in chief, the State delved into the matter on cross examination of the defendant. The prosecutor repeated the inculpatory statements and asked defendant whether he had made such to Ms. Maze. Defendant asserts that the State should not have been permitted to introduce the inculpatory statements without first demonstrating that they were freely and voluntarily made.
In State v. Hathorn, 395 So.2d 783, 785 (La.1981), the Court declared:
"Before a confession or inculpatory statement can be introduced in evidence, it must be affirmatively shown by the state that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. If the interrogation and subsequent confession are in a non-custodial situation, the only showing which the state must make is whether the confession is free and voluntary, as the Miranda warnings apply only to custodial interrogations. State v. Pittman, 368 So.2d 705 (La. 1979)."
The record reflects that although the State did not technically comply with LSA-R.S. 15:451, no prejudice was suffered by defendant as a result thereof. After the State closed its case in chief Ms. Maze apparently had a change in heart and testified on rebuttal that the inculpatory statements made to her by the defendant were not the product of any form of threat, duress, promise or other form of coercion. The rationale behind R.S. 15:451 of excluding *1195 from evidence untrustworthy confessions and inculpatory statements, therefore was not circumvented by the trial court's failure to require a foundation before the fact. This assignment lacks merit.
Assignment of Error No. 9
Defendant argues that the trial court erred in allowing the prosecution to display to the jury, during the testimony of Police Chief Minos Hardy, a pre-prepared sketch map of the vicinity of the alleged crime which prejudicially distorted the distances involved. Before displaying the map to the jury the State established that it had not been prepared by an architect, or surveyor and was not drawn to scale. However, the defendant asserts that the fact that the map was prepared ahead of time prejudiced the jury into believing that there was some effort to show scale. We find that the State's disclaimer was sufficient to put the jury on notice that the map was not to be interpreted as a scale model. Defendant was not unduly prejudiced by its display to the jury. There is no merit in this assignment.
Assignment of Error No. 10
Next, defendant contends that the trial court erred in allowing the proceedings surrounding the attempted swearing in of Alverta Maze during the prosecution's case in chief to proceed for longer than necessary, thus allowing the affair to be transformed into a "prejudicial spectacle."
There is no merit in this assignment. Ms. Maze's testimony was of critical importance to the State's case and the record demonstrates that the trial court made a diligent effort to persuade her to testify. During this time a sheriff's deputy did remark in the jury's presence that witness was afraid to testify. However, the statement was totally unsolicited and the trial judge instructed the jury to disregard it. The judge also admonished the jury to forget the entire scene created by Ms. Maze's failure to speak. Under these circumstances it cannot be said that any prejudice suffered by defendant as a result of this proceeding was of such magnitude to deny him his right to a fair trial. Assignment No. 10 has no merit.
Assignment of Error No. 11
Next defendant contends that the trial court erred in refusing to allow defendant's sister Mary Louise Huntley to testify for the defense. The trial court barred Ms. Huntley from testifying after discovering that she had violated a sequestration order by being present in the courtroom during the testimony of State witnesses Marion Greene and Minos Hardy.
LSA-C.Cr.P. art. 764 provides in pertinent part:
"Upon its own motion the court may, and upon request of the State or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel."
State v. Jones, 354 So.2d 530 (La.1978), offers an excellent discussion on the latitude afforded the trial judge regarding a violation of sequestration order. In Jones, supra at 531, 532, the Court commented:
"Although we have consistently held that the action to be taken in the face of a violation of a sequestration order rests within the sound discretion of the trial judge, State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Batts, 324 So.2d 415 (La.1975); State v. McKinney, 302 So.2d 917 (La.1974); State v. Browning, 290 So.2d 322 (La.1974), the discretion in this regard is not unlimited. Article I, Section 16 of the Louisiana Constitution of 1974 guarantees an accused the right to compel the attendance of witnesses and to present a defense. The Sixth Amendment to the United States Constitution provides that the accused shall enjoy the right to have compulsory process for obtaining witnesses in his favor, and this right is enforceable against the States through the Fourteenth Amendment. *1196 Washington v. Texas, 338 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).
* * * * * *
Although our jurisprudence allowing trial judges to enforce sequestration pursuant to La.C.Cr.P. art. 764 by excluding testimony of disobedient witnesses does reflect a legitimate state interest in preventing testimonial influence, that interest is not sufficient to override the defendant's rights to have compulsory process and to present a defense under either the federal or the state constitution. This is not to imply that there may be no risk of a witness coloring his testimony to conform to what has gone before. But our adversary system reposes judgment of the credibility of all witnesses in the jury. Excluding the witness's testimony, in the absence of a sequestration violation with the consent or knowledge of the defendant or his counsel, is not a constitutionally permissible means of insuring reliable testimony. Cf. Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972)."
In State v. Boutte, 384 So.2d 773, 777 (La.1980), the Court emphasized that "not every erroneous exclusion of disobeying witnesses is reversible error. If the testimony is not relevant or material to the defendant's case then the defendant has not been prejudiced by the court's ruling. (Citation omitted)." In Boutte, supra, the Court ruled that the erroneous exclusion of the witness by the trial court was not reversible error even though the witness' testimony was material and relevant. The Court reasoned that the excluded testimony would not have affected the trial court's judgment.
In the case at bar there is no evidence that the excluded witness violated the sequestration order with the consent, connivance or knowledge of defense counsel or defendant. Therefore, the relevant inquiry is whether the exclusion of the witness had any effect on the jury's verdict. In considering this question we note that Ms. Huntley was to testify that, except for a brief period, defendant spent the entire morning of the crime with her and their mother. This testimony was relevant to the case in that it supported defendant's alibi defense. However, as defendant readily admits, Ms. Huntley's testimony would have been cummulative with the testimony given by the defendant and his mother. Therefore, it is unlikely that its exclusion had any effect on the jury's decision in this case. They obviously believed that defendant's brief departure on the morning in question gave him sufficient time to murder the victim. Under these circumstances the impact of exclusion is so minimal that it does not constitute reversible error, even though the excluded testimony was relevant and material. This assignment lacks merit.
Assignment of Error No. 12
Defendant contends that the trial court erred in allowing the State to exceed the proper scope of rebuttal. He maintains that Alberta Maze's testimony concerning inculpatory statements made by him should have been brought out as part of the State's case-in-chief, or not at all.
In State v. Huizar, 414 So.2d 741 (La. 1982), the Court declared:
"Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. R.S. 15:282. State v. Constantine, 364 So.2d 1011 (La.1978). Such evidence may be used to strengthen the state's original case. State v. Howard, 120 La. 311, 45 So. 260 (La.1908). The determination of whether evidence is rebuttal evidence and hence, admissible, is an issue which is addressed to the sound discretion of the trial court judge. State v. Green, 390 So.2d 1253 (La.1980)."
Because of the unique circumstances of this case, defendant's objection is without merit. Calling Ms. Maze on rebuttal was not an attempt by the State to gain an unfair advantage over defendant. On the contrary, both the trial judge and district attorney tried in vain to persuade the witness to testify during the presentation of the State's case in chief. Moreover, we *1197 note that defendant testified on redirect exam that he never saw or spoke to Ms. Maze on the day of the crimewhich in essence was a surrebuttal before the fact. Therefore, there was no abuse of the trial court's discretion. This assignment has no merit.
Assignment of Error No. 13
Defendant complains that the jury's verdict of guilty as charged was not supported by the law and evidence and therefore the trial court erred in denying his post-verdict motion for acquittal.
The State's case was based on circumstantial and direct evidence.[4] Therefore, the proper inquiry is whether a rational trier of fact, viewing the evidence in a light most favorable to the State, would conclude that defendant's guilt had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 421 So.2d 887 (La.1982).
Defendant maintains that the State failed to meet its burden of proof as to the elements of intent and identity. Our purview of the record persuades us otherwise. We hold that after considering the evidence presented in this case, a rational trier of fact could have concluded beyond a reasonable doubt that defendant intended to kill or inflict great bodily injury upon the person of the victim during the commission of an armed robbery and therefore was guilty of first degree murder. LSA-R.S. 14:30. This assignment is without merit.
Assignment of Error No. 14
By this assignment defendant argues that the trial court erred in refusing to grant an order of appeal to the Louisiana Supreme Court and in ruling that the case was properly appealable to this Court. He avers that at the time of the offense, Article 5, § 2 of the 1974 Louisiana Constitution provided those convicted of a capital offense with the right of a direct appeal to the Louisiana Supreme Court. The 1980 Amendment to Article 5, § 10(A) (Act 843, § 1) granting Courts of Appeal criminal jurisdiction was not effective until July 1, 1982, he maintains, and therefore the trial court's retrospective application of that amendment violates the United States and Louisiana Constitutional prohibitions against ex post facto laws. See Article I, § 10 United States Constitution; Article I, § 23, 1974 Louisiana Constitution.
An ex post facto law is defined as a law passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed. Black's Law Dictionary, 662 (Rev. 4th Edition 1968). In State v. Sepulvado, 342 So.2d 630 (La.1977), the Court set forth the criteria utilized in determining whether a law is ex post facto:
"The ex post facto prohibition comes into effect when a law makes an act criminal which was innocent when done and punishes such action; or aggravates a crime or makes it greater than when committed; or changes the punishment and inflicts a greater punishment than the law in effect when the crime was committed; or alters the rules of evidence to receive less or different testimony that the law required at the time the offense was committed in order to convict. Calder v. Bull, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). A fifth category holds that any law is considered ex post facto which is enacted after the offense was committed and which alters the situation of the accused to his disadvantage. Kring v. Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882); Payne v. Nash, 327 F.2d 197 (8th Cir.1964); State v. Ferrie, 243 La. 416, 144 So.2d 380 (1962); 16A C.J.S. Constitutional Law §§ 440-46 (1956)."
In Portley v. Grossman, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980), the Supreme Court emphasized that not every law which operates to the accused's disadvantage *1198 is ex post facto. The Court declared:
"In Dobert v. Florida [432 U.S. 282], 97 S.Ct. 2290, 2298 [53 L.Ed.2d 344] (1977), this Court held that the prohibition of ex post facto laws does not extend to every change of law that `may work to the disadvantage of a defendant'. It is intended to secure `substantial personal rights' from retroactive deprivation and does not `limit the legislative control of remedies and modes of procedure which do not affect matters of substance.'" Ibid. (Emphasis added).
In our opinion 1980 Act 843, § 1 which transferred jurisdiction over specified criminal matters from the Supreme Court to the courts of appeal, did not divest the defendant of a substantial personal right. We do not believe the ex post facto prohibition was intended to preclude the legislature from exercising its right to alter Supreme Court jurisdiction. This assignment is devoid of merit.
Assignment of Error No. 15
By this assignment it is the defendant's contention that the sentence imposed of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence was cruel, unusual and excessive.
In State v. Sepulvado, 367 So.2d 762 (La.1979), the Louisiana Supreme Court decided that the imposition of a sentence, even though within the statutory limits, may be unconstitutionally excessive in violation of Article 1, Section 20 of the Louisiana Constitution of 1974.[5] A sentence has been determined to be excessive punishment when the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposelessness and needless imposition of pain and suffering. State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983); State v. Reed, 409 So.2d 266 (La.1982). However, due to the trial judge's unique advantage of viewing subjective factors not available from the appeal record he is given a wide discretion in the imposition of sentences within statutory limits, and a sentence imposed by him should not be set aside as excessive in the absence of manifest abuse of his discretion. Sepulvado and Goodman, supra; State v. Howard, 414 So.2d 1210 (La.1982); State v. Bradley, 414 So.2d 724 (La.1982).
We are unable to find any manifest abuse in this case. The sentence was imposed following a jury determination of guilt of one of the most serious crimes contemplated by the laws of the state of Louisiana. Having found no abuse of discretion we will not disturb this sentence on appeal.
While there is no merit to any of defendant's assignments of error, it is apparent that the sentence imposed, life imprisonment at hard labor without benefit of probation, parole, suspension or commutation of sentence, is improper. The power of the Governor to pardon or commute may not be precluded by the terms of an imposed sentence[6]. La. Const. Art. IV, § 5 (1974); State v. Varice, 292 So.2d 703 (La. 1974); State v. Williams, 338 So.2d 672 (La. 1976).
For the reasons stated above, the defendant's conviction is affirmed, but the sentence is vacated and set aside, and the case is remanded to the district court with instructions to the trial judge to sentence defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
AFFIRMED, BUT REMANDED FOR RE-SENTENCING.
*1199 DOMENGEAUX, Judge, concurring.
Although I authored the majority opinion, I feel it necessary to specially concur in this case insofar as the opinion relates both to the review of fact doctrine and review of sentence for excessiveness. As to the review of facts doctrine, I reiterate the views stated in my previous concurring opinion in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); see also State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983), handed down this date. I feel that the continued application of the review of facts rationale set out in Jackson v. Virginia, supra, and State v. Mathews, 375 So.2d 1165 (La.1979), results in our appellate courts becoming nothing more than second guessers of the triers of fact. As to the appellate review of sentence doctrine, I reiterate the position that I stated previously in my concurring opinions in State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), and State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), writ denied, that our new constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See also State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), and State v. Robicheaux, 438 So.2d 1185 (La.App. 3rd Cir.1983), both handed down by this Court on this date.
NOTES
[*] For the reasons stated therein, the author of this opinion has also filed a concurring opinion.
[1] Article 5, § 19 as amended by Act 801 of 1979 states:

"The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law. However, the legislature may (1) by a two thirds vote of the elected members of each house provide that special juvenile procedures shall not apply to juveniles arrested for having committed first or second degree murder, manslaughter, aggravated rape, armed robbery, aggravated burglary or aggravated kidnapping, and (2) by two-thirds vote of the elected members of each house lower the maximum ages of persons to whom juvenile procedures shall apply, and (3) by two-thirds vote of the elected members of each house establish a procedure by which the court of original jurisdiction may waive special juvenile procedures in order that adult procedures shall apply in individual cases. The legislature, by a majority of the elected members of each house, shall make special provisions for detention and custody of juveniles who are subject to the jurisdiction of the district court pending determination of guilt or innocence."
[2] Admittedly Leach, supra, addressed LSA-R.S. 13:1570(A)(5) as amended in 1980. However, since there are no significant differences between the original and amended versions, it can also be said that LSA-R.S. 13:1570(A)(5) as existed before 1980 was not unconstitutional.
[3] We note that defendant did not object at the trial level to the court's failure to swear in jurors Michael Labit and Andrew Rizzuto, Jr. However, such a defect can be considered "error patent" and therefore is properly reviewable on appeal. LSA-C.Cr.P. art. 920(2).
[4] Inculpatory statements are considered direct evidence. State v. Legro, 410 So.2d 1063 (La. 1982).
[5] Article 1, Section 20 of the La. Const. of 1974 states:

"No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense."
[6] It is evident that the portion of the sentence prohibiting commutation was an inadvertency. Although the record shows that the district judge orally recognized this, nevertheless the record on sentencing was not corrected in accordance therewith. Hence, it is legally necessary that we remand for re-sentencing.